## HERSHEY v. O'NEILL.

*Circuit Court, S. D. New York.   September 5, 1888.)*

1. **MALICIOUS PROSECUTION—PLEADING—NEGATIVE PREGNANT.**
   The complaint, in an action for malicious prosecution and false imprisonment, alleged that defendant, by his agents, arrested plaintiff on a false charge, without authority or reasonable cause. The answer denied that defendant or his agents falsely or maliciously or without reasonable cause did any of the acts alleged. *Held* that, while the answer contained a negative pregnant, yet, as a subsequent paragraph alleged that one of defendant's clerks, having reasonable cause to believe that plaintiff had committed larceny, caused her to be arrested by a police officer, it did not admit that the arrest was made by defendant, and deny only the allegation of malice. Especially should this view be taken as the objection was not made until the trial, and plaintiff had not been misled.

2. **SAME—PROBABLE CAUSE—ARREST BY PRIVATE PERSON.**
   Plaintiff testified on the trial that she went to defendant's store, where she was unacquainted, took an umbrella from the counter, and, to enable her to examine it more closely, carried it a short distance to the light near the door, when she was roughly seized by defendant's salesman, and pushed through the store into the basement. After an examination there, in presence of a policeman and others, she was arrested, taken to the station-house, and, after another examination, locked up until bail was given. She was subsequently tried and acquitted. Defendant proved that the umbrella counter was 40 or 50 feet from the door, and was in the lightest part of the store. Several witnesses testified that plaintiff took the umbrella, walked out of the store, and was proceeding down the street, having pulled off the tag, when the salesman politely touched her, and requested her to return into the store, and the two walked quietly to the ladies' lunch-room, in the basement; that she confessed her guilt then, and afterwards to the captain of police. *Held,* that a verdict for defendant would not be disturbed, as the salesman had used no force, and as, upon defendant's testimony, a larceny had been committed, justifying an arrest by a private person.

3. **SAME—PRINCIPAL AND AGENT—SPECIAL PATROLMEN.**
   Under Laws N. Y. 1884, c. 180, § 269, providing that special patrolmen shall be subject to the orders of the superintendent of police, etc., and shall possess all the powers and discharge all the duties applicable to regular patrolmen, a special patrolman is not the mere servant of a person on whose premises he is appointed for duty, and by whom his salary is paid, and such person is not responsible for his official acts.

4. **SAME.**
   A person is not liable for an arrest made by a policeman on information furnished by such person's clerk without his knowledge or authority.

On Motion for New Trial.

This is an action for false imprisonment and malicious prosecution. On the 4th of August, 1887, the plaintiff, a resident of Philadelphia, came to the store of the defendant, on Sixth avenue, New York, in company with a female friend. She had never been there before, and was a total stranger to the defendant and his employes. Her version of the subsequent occurrences is as follows: She says she went to the umbrella counter, took up an umbrella, and, to enable her to examine more closely the quality of the silk, carried it a short distance to the light near the door. While she was adjusting her eye-glasses for this purpose, she was roughly seized by the arm by Saunders, a salesman of the defendant, and pushed through the store, and into the basement. After an examination there,

in the presence of a policeman and two or three of the defendant's employes, she was arrested, and taken to the station-house, and, after being examined by the officer in charge, she was locked up for two or three hours, until bail was given by a friend. She was subsequently tried at a court of special sessions, and acquitted. This is, in brief, the testimony of the plaintiff. It is uncorroborated, except in a few unimportant details. On the other hand, the defendant proved that the umbrella counter was between 40 and 50 feet from the door in question, and that it was in the lightest part of the store. Several witnesses testified that the plaintiff took the umbrella, walked with it through the store out upon the sidewalk, and was proceeding down Sixth avenue, having in the mean time pulled off the tag, when the salesman, Saunders, followed her, touched her politely on the shoulder, and requested her to return into the store. No physical restraint was used, and the two walked quietly through the store to the ladies' lunch-room in the basement. The special police officer stationed on the premises was then summoned, and the plaintiff, having in substance admitted her guilt, was taken to the Twenty-Ninth precinct police station. She was there examined by the captain of police in charge, and again confessed the larceny. Thereupon she was locked up until bail was furnished, some two or three hours afterwards. The following morning she appeared in court, and was held for trial. Upon these facts the jury found a verdict for the defendant. The plaintiff now moves for a new trial upon the following grounds: *First*, the answer admits that the acts complained of were the acts of defendant's servants, and he should not, therefore, have been permitted to dispute their authority; *second*, it was error to instruct the jury that if they believed the defendant's witnesses their verdict should be for the defendant, for the reason that, even upon the defendant's testimony, there was a technical arrest by an unauthorized person; *third*, it was error to instruct the jury that the defendant was not liable, in an action of false imprisonment, for the acts of Officer Kenney.

*Henry G. Ward*, for plaintiff.

*Edward C. James*, for defendant.

Coxe, J., (*after stating the facts as above.*) Being more than ever convinced, after a re-examination of the evidence, that the verdict was right, and in accordance with the great preponderance of testimony, the court is not disposed to grant a new trial upon any ground which is merely technical and formal in character. Where the court can see that a proper result has been reached, that the party has succeeded who ought to succeed, the endeavor should be to preserve the fruits of the trial. Every doubt should be resolved in favor of affirmance; every exception not affecting the merits should be disregarded. Where a controversy has terminated in a correct and honest verdict, it is for the advantage of both parties that litigation should cease.

The question arising on the pleadings is this: The complaint alleges, in substance, that the defendant, by his agents, servants, and employes, arrested the plaintiff on a false charge, without right, authority, or rea-

sonable cause. The answer denies that the defendant, or his agents, servants, or employes, falsely or maliciously, or without reasonable cause, did any of the acts alleged against him or them in said complaint. It is asserted by the plaintiff that here is an admission that the arrest was made by the defendant's agents, and a denial only of the allegation that they acted maliciously and without probable cause. In other words, the defendant admits that his agents did the acts in question, when he denies that they did those acts maliciously. It is true that the answer contains a negative pregnant, that it is not an artistic piece of pleading, and that a motion to make it more definite and certain would, in all probability, have prevailed. There certainly is plausibility in the contention that the authority of the defendant's servants to act as they did is admitted; and yet it is quite clear, taking the answer in its entirety, that it was not the intention of the pleader to place the defendant in this attitude. The plaintiff could hardly have been misled by this denial. In a subsequent paragraph the answer sets out fully the facts as they were understood by the defendant. It alleges that one of his clerks, having reasonable cause to suspect the plaintiff of the commission of the crime of larceny, took the umbrella from her and caused her to be arrested. This was true. The defendant could not, truthfully, have denied it. The answer further alleges that the person who made the arrest was a police officer appointed pursuant to law. All this is inconsistent with the theory that the defendant admits that the plaintiff was apprehended and arrested by his agents, acting under his authority. It is not the spirit of modern jurisprudence to defeat a party, or deprive him of a substantial right, by a nice and overstrained construction of his pleading. On the contrary, where, as in this case, the objection is not made until the trial, it should not be heeded, unless the other party has been misled to his injury; and, in all cases where it can properly be done, ample opportunity for amendment should be permitted. It is thought, therefore, that the answer, taken as a whole, is susceptible of a more liberal interpretation than that placed upon it by the plaintiff, and that within the authority of *Wall* v. *Water Co.*, 18 N. Y. 118, it may be held to put all the corresponding allegations of the complaint in issue. But, if this were otherwise, no reason is suggested why an amendment may not, even now, be made. *Railroad Co.* v. *McHenry*, 17 Fed. Rep. 414, and cases cited.

There was no mistake in instructing the jury that they should find for the defendant if they believed his witnesses. To say that the acts of Saunders, as related by him, amounted to an arrest, is surely to view them in a light superlatively harsh. No force was used. There were no threats. The plaintiff returned voluntarily; she was not compelled to do so by anything which Saunders did. The sidewalk on Sixth avenue was not a proper place to transact business, and his request, or demand even, that she should return, was not inconsistent with a satisfactory arrangement of the difficulty inside the store. That the plaintiff so understood it is quite evident, for she testifies: "I supposed that he was going to take me to the proprietor of the store, and I turned around and

walked with him, back." And again, upon the defendant's testimony, a larceny had actually been committed justifying an arrest by a private individual. *Burns* v. *Erben*, 40 N. Y. 463.

The third and last assignment of error raises an interesting and novel question: Was the court right in holding that the defendant is not responsible for the acts of Kenney, because he was a police officer? Notwithstanding the able and ingenious argument of plaintiff's counsel, it is thought that the ruling made at the trial should remain unchanged. Kenney, under the terms of the act, (Laws 1884, c. 180, § 269,) was subject to the orders of the superintendent of police; was required to obey the rules and regulations, general and special, of the police board; to conform to its discipline, and wear its dress or emblem. The act further provides that a patrolman so appointed shall be subject to removal by the board without cause assigned, and "shall possess all the powers and discharge all the duties of the police force applicable to regular patrolmen." Kenney, therefore, possessed all the common-law and statutory powers of constables, except for the service of civil process. It was made his duty by law at all times of day and night to prevent crime, detect and arrest offenders, protect the rights of persons and property, and, with or without warrant, to arrest all persons guilty of violating the law. He was, it is true, appointed for duty in the defendant's store, and was paid by the defendant. In all other respects, so far as this controversy is concerned, he was as much a member of the metropolitan force as any patrolman. It was the intent and purpose of the law to invest him with all the rights, powers, privileges, and immunities of a regular policeman. If this were not the object, if the *status* of the person so appointed remains unchanged, if the relations of master and servant still exist, it is not easy to see why the act was passed. The provision that the person particularly benefited shall pay the salary does not render nugatory the other provisions of the act, and deprive the policeman of the broad authority expressly delegated. He is not, in other words, the mere servant of the person who pays him. It is understood that this construction has been placed upon the law by the state courts, and it would seem to be more in accordance with reason and common sense than the opposing theory.

There can be no force in the contention that the defendant is liable for a false imprisonment because the arrest by Kenney was instigated by Saunders. To hold a merchant liable for the acts of a police officer because one of the merchant's clerks, with no authority from him, in his absence, and without his knowledge, gives information to the officer which induces him to arrest a person who, apparently, has committed a crime in the informant's presence, would be going far beyond any reported case. *Teal* v. *Fissel*, 28 Fed. Rep. 351; *Von Latham* v. *Libby*, 38 Barb. 339; *Brown* v. *Chadscy*, 39 Barb. 253.

The cause was presented as fairly for the plaintiff as she had a right to expect. Had the trial taken place in a state tribunal, it is altogether probable that it would have been terminated by the court, and not the jury. *Mali* v. *Lord*, 39 N. Y. 381; *Burns* v. *Erben*, 40 N. Y. 463.

The plaintiff was a total stranger to all in the store. Necessarily she was judged, not by what she was, but by what she seemed to be. It was a most natural inference from her conduct that she intended to take the defendant's property. The testimony is overwhelming that she took the umbrella without asking permission, and with no word of explanation carried it 40 feet through the store, and was actually walking with it down Sixth avenue when she was requested to return. It would seem that a clerk who hesitated to protect his employer's property in such circumstances would be most derelict in his duty. The plaintiff's conduct, to state it mildly, was exceedingly suspicious, and for the unfortunate occurrences which followed she has herself alone to thank. It would seem that no impartial person can read this record and reach a conclusion different from that reached by the jury. The motion is denied.