GUZMÁN, PLAINTIFF AND APPELLANT, v. AMERICAN RAILROAD
COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Mayagüez in an Action
for Damages.

No. 2178.—Decided April 29, 1921.

DAMAGES—PLEADING—NEGATIVE PREGNANT.—When a negative pregnant denies
the allegation to which it refers the defect may be considered as one of
form only and as waived if no objection is made before the trial; and such
defect will not be considered as fatal unless it appears that the adverse
party has been misled to his prejudice.

ID.—ID.— FIRE—NEGLIGENCE—VARIANCE—AMENDMENT—CONTINUANCE—SURPRISE.
—When an action for damages is based on the negligent operation of a
locomotive by the employees of the defendant in allowing it to drop sparks
which set fire to the plaintiff's growing crops and the evidence shows that
the sparks first set fire to the dry grass on the railroad track, the variance
is not fatal and the plaintiff has a right to amend his complaint after the
evidence is examined, without prejudice to the granting of a continuance
if the amendment operates as a surprise to the defendant.

ID.—ID.—ID.—ID.—BURDEN OF PROOF.—Generally the burden is on the plaintiff
to prove the kind of negligence alleged in his declaration, complaint or
petition. Whether or not he complies with this requirement by proving that
the fire which destroyed his property came from a locomotive of the de-
fendant, is a question as to which the opinions of the courts are divided,
with a strong preponderance in favor of the affirmative.

The facts are stated in the opinion.

*Mr. A. A. Vázquez* for the appellant.

*Messrs. G. H. Moscoso* and *F. G. Pérez Almiroty* for the
appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The fifth and eighth paragraphs of the complaint herein
read as follows:

"5th. At about 2:15 p. m., of February 4, 1919, a freight and
passenger train of the defendant going from Mayagüez to San Ger-
mán, P. R., while crossing the property described locomotive No. 67
was so negligently operated by the defendant's employees that then
and there ignited matter dropped from the said locomotive and im-
mediately set fire to the cane mentioned in paragraph 11 and caused
a conflagration that extended to the cane plantation and completely
destroyed ten acres of the said cane and young plants and rendered
them entirely unfit for growth and production."

"8th. The fire which occurred in the cane belonging to the plaintiff and the consequent loss sustained by him in the form and manner stated, were the direct and proximate consequence of the defendant's negligence through its employees."

The third paragraph of the second amended answer reads as follows:

"3rd. The defendant specifically denies on information and belief that at the hour of the day, month and year referred to in the complaint its locomotive No. 67 which was hauling a freight and passenger train from Mayagüez to San Germán, P. R., was at any time during its run so negligently operated by the defendant's employees in charge of its operation that for that reason ignited matter dropped from the said locomotive, thus communicating fire to the cane mentioned in the fifth paragraph of the complaint and causing the conflagration in the manner and to the extent recited in the said fifth paragraph of the complaint, and therefore denies the said allegation in all its parts."

The findings of the court below and the theory upon which the action was dismissed are indicated by the trial judge in the following statement:

"On this point the court is of opinion that the evidence adduced at the trial by the plaintiff is not sufficient to support the said allegations of the complaint, inasmuch as according to the said complaint the charge of negligence is based upon the negligent operation of the locomotive in question, as to which fact the evidence is silent. It tends rather to show that the fire started in a manner distinct from that alleged in the complaint. This variance, in the opinion of the court, is fatal. (See 23 Cyc. 1352, note 96.)

"Finally, and inasmuch as this suit is based upon one cause of negligence and the evidence shows a cause distinct from the one alleged, the court necessarily arrives at the conclusion that the complaint in this case can not be sustained. (See 33 Cyc. page 1356, par. *c*, and note 23, at page 1357.)"

The testimony as disclosed by the record, in so far as pertinent to the question so raised, is in substance as follows:

"Manuel Santiago testifies that at 2:30 p. m. of February 4th he was with José Miguel Figueroa and Isaac Torres, the foreman of

the plaintiff's property, at the weighing machine of the farm Coto some forty meters up from the place where the fire started when the locomotive of the mail train was coming up and crossing the property of the plaintiff and the train passed near us. We were at the side of the track and when the train passed we heard a voice say 'fire' and immediately we looked and ran; that Jorge Martínez, in charge of the planting on that property, was also present; that the pasture lying between the track and the cane was dry and caught fire which was propagated to the cane plantation, and as we had no means of extinguishing it, it spread along the whole border of the track which was full of dry grass, thus entering the cane plantation; that José Miguel Figueroa sent a man to the farm to ring the bell and we were able to check the fire, but in spite of this ten acres were burned; that in the same afternoon and after the fire had been extinguished I went to San Germán and asked the chief of the station what locomotive had hauled the mail train, and after calling Mayagüez he said that it was locomotive No. 67; that the farm Coto where the Guánica Centrale has the said weighing machine installed lies between the road leading from Mayagüez to San Germán and the railroad track, and witness was there waiting for the arrival of some of his cane wagons to proceed to weigh the cane and the foreman of the adjoining property was also there; that the train was coming from below and in passing a grade crossing the whistle was blown and witness and his companion looked in that direction; that after the train had already passed some forty meters a boy named Martínez shouted 'fire' and they ran away; that the train first comes from Filial Amor towards Bifurque, the accident having taken place near Bifurque; that the property lies between Filial Amor and the weighing machine, the latter bordering the property at some fifteen meters from the property; that before the train arrives at the place of the weighing machine the whole road is straight and plain from Filial Amor; that witness saw the train starting from Filial Amor because he was standing between the track and the weighing machine and the engine was throwing up smoke and making explosions; that the explosions produced fire on the outside, and some times sparks, and on the day in question the sparks were thrown from beneath the engine; that they arrived at the moment and found sparks on the ground; these were little pieces of cinders; that witness heard that young man saying 'fire' and upon arriving witness said 'here it is;' that nobody was there where they found the cinders where there was fire; that that is not a public road but exclusively for the railroad

track; that the cinders were on the left side on the outside of the track; that it is about 35 or 40 meters from the scales to where the fire started and some 5 or 6 meters from the track to the cane of the plaintiff; that from the place where the cinders were on the left side of the track there was not half a meter distance, as the grass was over the track some 20 or 24 inches; that the grass around there was dry, a pasture between the track and the cane which forms there and grows, the company being under the obligation of cleaning said pasture; that the track was cleaned in the middle; that there is a kind of gravel; that from the weighing machine to Bifurque is some 50 or 60 meters and a little above Bifurque the engine starts increasing its speed; that down to Bifurque it is level land; that when they arrived at the place the fire was increasing; that the cinders they found were of the size of grains of corn; that they saw some pieces of cinder which they extinguished with their shoes; that at the place where the fire took place the engine comes already increasing its speed, which causes the explosions; that at times the grass remains uncut for five or six months; that in the month of January this grass gets dry and overspreads the track; that the wheels of the engine cut it and it was so cut on the day of the fire; that the cinders were in the grass and the cane straw being over the grass took fire. There was much dry grass because in the months of January and February it does not rain and it is the dry and windy season; that no persons pass thereby, and the only thing below is a grade-crossing, and then the road, but it is at about 10 or 12 meters from the track; that upon arriving at the spot witness found the cinders in the ditch at the edge of the filling, at some sixteen inches from the rail, there being about five meters distance from the track to the cane.

"José Miguel Figueroa, a foreman of the property named San José of Alfredo Ramírez and also in charge of the Coto property, testified that he was standing between the track and the weighing machine when he heard someone shouting 'fire'; that upon arriving at the place where Jorge Martínez was he saw some cinders which set fire to the dry grass between the track and the cane; that the fire spread to the plaintiff's cane due to the wind that favored it, notwithstanding the efforts made for its extinction; that upon arriving at the place of the fire witness saw the cinders at a distance of sixteen or twenty inches from the track, from east to west, towards the right. The cinders were in little pieces; that under the circumstances he was unable to notice whether they were half inch or

of the size of Spanish pea; that the train was making explosions as there is a slight grade; that the locomotive hauling the said train was quite large, witness thinking it was one of the largest. That the exploding is that in coming up, the train is forced with more speed. A straight line is there, but there is a slight grade starting before the weighing machine and before the place of the fire, also towards the west. This is a slight grade within that same level land which causes the explosions.

"Jorge Martínez testified that he was at the farm of the plaintiff when the mail train passed through it and seeing some smoke coming out he approached the place and saw that it was fire, and the wind was strong. Then José Miguel Figueroa, Isaac Torres and Manuel Santiago were at the weighing machine of Coto, some thirty-five or forty meters distant, and witness shouted there was a fire and thereupon the four men came, but being unable to do anything, José Miguel Figueroa sent a man he had at work thereabout to get some help and to ring the farm bell so that he could gather his men and be of help at the fire; that then some forty or fifty men came; that if it had not been for their help the fire in the cane would have been greater because even at the farm of Ramírez half a square was burnt. I saw the cinders there near the track and I myself helped to extinguish them with my shoes. They were coal cinders of the size of a grain of corn and no other locomotive passes through there but the one of the railroad company. On cross-examination witness said that from the place where he saw the cinders to where these gentlemen were there is a distance of some twenty-five or forty meters. The cinders were outside the track and spread the fire to the dry grass between the track and the cane, and then it extended to the whole cane. The farm is of level land, but there is a small grade starting a little further down a bridge, at some five or six meters distance where the fire began. From Bifurque to Filial Amor everything is plain though not level. I saw there small cinders at fifteen or twenty inches distance from the track, the company being under the duty of keeping the grass cut."

After a judgment of dismissal, and upon the ground of mistake, inadvertence, surprise and excusable neglect alleged to be due to the failure of defendant to make any objection whatever to the evidence adduced, thus leading plaintiff to believe that the same was pertinent as bearing upon the

negligence alleged in the complaint, plaintiff moved for a new trial with a view to an amendment of his complaint to conform to such evidence.

Plaintiff appeals from the judgment and from an order overruling the motion for a new trial.

Under the first assignment, to wit, that the court erred in dismissing the action for want of proof as to the negligence of the defendant, appellant, in addition to a rehearsal of the testimony, insists in effect that the attempted denial of the fifth paragraph of the complaint is a negative pregnant, although without so naming it, and as such admits the negligence of the defendant, citing "Kerr's page 594" and copying therefrom the paragraphs based upon three early California cases, *Landers* v. *Bolton,* 26 Cal. 393; *Doll* v. *Good,* 33 Cal. 237, 290, and *Blankman* v. *Vallejo,* 15 Cal. 638.

The proposition as stated by appellant (italics ours) is that "a negative in such form is bad and implies an admission, *because the defendant cannot deny upon information and belief its personal acts."*

Appellee, joining issue on the proposition as stated, opens its brief with a statement that "as we are the appellees, in this case, our duty is limited to contradict the argument of the opposite party as appears from the written brief filed by the appellant."

The argument then ignoring the real question involved proceeds to show that a denial of such negligence "upon information and belief" is permissible, citing *Pérez* v. *Guánica Centrale,* 17 P. R. R. 927. This is followed by further suggestions as to what the complaint should allege as to negligence; as to what evidence is admissible thereunder; as to what amounts to a variance, and as to the rule that an amendment must not constitute a separate and distinct cause of action, citing 33 Cyc. pages 1351 (*b*); 1356 (*c*); 1357, note 23, 1354, note 8.

Appellee also refers to *Garrett* v. *Southern R. R. Co.,*

101 Fed. 102, and *Niskern* v. *Chicago, Etc., Ry. Co.,* 22 Fed. 811, as holding that in an action against a railroad company for damages caused by fire through the operation of its locomotives, trains or roads, the burden of proof rests upon the plaintiff to show by a preponderance of the evidence, negligence on the part of defendant as alleged and that such negligence was the cause of the damage, that is to say, that by reason of such negligence the fire was communicated to the property of plaintiff by sparks escaping from the locomotives, etc.

Thompson on Negligence, page 794, section 2231, is quoted as enumerating five distinct causes of action from which, it is said, a complainant may be permitted to elect not more than one in drawing his complaint and we are referred to section 2263 of the same volume as indicating what plaintiff may prove under the averments of such complaint, and finally 33 Cyc. 1340, III; *Steele* v. *Pacific Coast R. R. Co.,* 73 Cal. 723; *Perry* v. *Southern Pacific,* 50 Cal. 578, and *Henry* v. *Southern Pacific, idem,* 176, are referred to in support of the proposition that ''the mere failure of a railroad company to clear its right of way of dry grass, weeds and other combustible materials which are the natural accumulations of the soil is not negligence *per se;* and the company will not be guilty of negligence and liable for losses resulting from fire occasioned by sparks igniting such accumulations, unless the accumulations were such as would not have been permitted by a cautious or ordinarily prudent man on his own premises if exposed to the same hazard.''

The general rules of pleading dealing with the question of a negative pregnant are discussed in *Somonte* v. *Mimoso,* 27 P. R. R. 398.  See also 1 Sutherland, 257, section 417.

''The rule forbidding negatives pregnant, however, is affected by the liberal rules of construction and amendment of pleadings that prevail generally under the code.''  Note to *Drennen* v. *Williams,* Ann. Cases, 1917 A, 664 at page 669.

And at page 675 of the same note it is said:

"Where a negative pregnant controverts the allegation to which it relates, the defect may be regarded as one of form only and waived if not objected to before trial. *Elton* v. *Markham,* 20 Barb. (N. Y.) 343; *Armstrong* v. *Danshy,* 75 Hun. 405, 27 N. Y. S. 60. Especially, as is pointed out in the reported case, will the defect not be regarded as fatal when it does not appear that the opposing party has been misled thereby to his injury. *Pigeon* v. *Osborn,* 4 Per. & Dav. (Eng.) 345, 9 Dowl. 511; *Hershey* v. *O'Neill,* 36 Fed. 168; *First Bank of Texola* v. *Terrell,* reported in full, *post,* this volume, at page 681."

In the case at bar the third paragraph of the answer, down to if not including the final clause thereof, is, to say the least, not a model of good pleading. Whether or not such final clause, taken in connection with its immediate context, can be regarded as controverting the allegation to which it relates, within the meaning of the rule just stated, is plainly open to argument. But, inasmuch as the attention of the district court was not directed at any time to this question of pleading and the matter is suggested for the first time on appeal and then apparently without any very clear notion of the principle involved, we can hardly conclude that plaintiff "has been misled thereby to his injury."

Following now the lead of appellee, in the absence of any pointers from appellant, and turning to volume 2 of Thompson on Negligence, we find that section 2263, although it does not purport to deal primarily with the burden of proof, is instructive as to what constitutes "negligence in running the engine whereby fire is· scattered." That section reads in part as follows:

"A locomotive or other steam-engine may, of course, be properly constructed and equipped, and yet may cause fires through negligence in its management; in which case, the liability is the same as stated in the preceding chapter. Overloading the locomotive may amount to such negligence. The engine may have the means of re-

taining the sparks, and yet there may be negligence in not properly managing the safeguards. Therefore, not only is it required that the locomotives of a railroad company should be . originally constructed with the best and most approved appliances to prevent the escape of fire, but, *if one of them has caused damage,* it will devolve upon the defendant to show that its engine was, at the time of the accident, both in good order and in the care of competent persons. Nor is it enough that the engine was well constructed and in the care of competent persons, but it must further appear that it was operated with ordinary care to the end of avoiding the scattering of fire. In a district where, from the dryness of the vegetation, fires are likely to be set out, this ordinary care requires the employes to· take into consideration the conditions prevailing, the speed and direction of the wind, and the risk to adjoining property, while giving due consideration to the interests of the railway service and the duty of the company to its patrons and the public.''

The question as to the burden of proof in this regard is discussed at length in sections 2284 *et seq.* of the same volume. From the opening paragraph of this exposition we quote the following:

''Unquestionably, the general burden of proof is upon the plaintiff to prove that species of negligence which he alleges in his declaration, complaint or petition. Whether he sustains this burden by proving that the fire which destroyed his property was communicated from a locomotive of the defendant, is a question on which, as we shall presently see, the courts are divided, with a strong preponderance of judicial opinion in favor of the proposition that he does.''

And section 2368 reads in part as follows:

''At the outset, it is to be observed that the burden is upon the plaintiff to prove, by a preponderance of evidence, legally competent, that the fire was communicated either from a passing locomotive of the defendant or otherwise from its right of way. From the nature of the case, this fact is seldom susceptible of proof by the evidence of witnesses who saw the actual communication of the fire; but it is generally to be inferred from the circumstance that the fire sprang up soon after the passage of the locomotive. The courts are generally agreed that evidence that the fire sprang up imme-

diately or very soon after the passage of a train of the defendant and that there was no fire in the vicinity before and no other apparent cause for a fire, is admissible, and is sufficient to warrant a jury in inferring that the fire was emitted from the passing locomotive.''

A brief statement of the grounds on which the doctrine in question is based is found in 11 Ruling Case Law, 989:

''The reasoning usually adopted in support of the rule that the origin of the fire being proved against the railroad company, it devolves upon such company to show that it has used all necessary precautions to avoid doing such mischief, is that the agents and employes of the road know, or are at least bound to know, that the engine is properly equipped to prevent fire from escaping, and that they know whether any mechanical contrivances were employed for that purpose, and if so, what was their character; while on the other hand, persons not connected with the road and who only see trains passing at a high rate of speed have no such means of information, and the same is inaccessible to and cannot be obtained by them without great trouble and expense, and then often only as a favor from the company, which under the circumstances, it would be very likely to withhold.''

In the light of this rule, section 2263, *supra,* relied upon by appellee, takes on a new and peculiar significance.

So, also, returning to Thompson, volume 2, 2273:

''The true rule is that, although it is not negligence *per se* for a railroad company to allow combustible materials to accumulate upon its right of way, yet to allow such accumulation may become actionable negligence *where it is reasonably probable that damage will result to adjoining property therefrom, in case of such material being fired by passing locomotives.''*

And, in the following paragraph, by way of illustration, it is said that:

''Where a railroad company suffered or permitted grass to remain on its right of way for three or four months after the close of the season in which such grass was in a green or growing state, in sufficient quantities to be ignited by sparks from passing locomotives,

and to communicate the fire so started to adjoining lands, this was held evidence of negligence."

But, as pointed out in section 2280:

"Aside from the question of the negligence of the company in allowing combustible materials to accumulate upon its right of way, it is to be observed that *evidence* of the existence of such materials is *relevant* as bearing upon the question of the degree of care necessary in operating its locomotives to prevent the scattering of fire; since, as already seen, greater care is demanded in operating locomotives to the end of avoiding the scattering of fire, where the track and right of way are strewn with combustible materials, than in other cases."

In *Deppe* v. *Atlantic Coast Line R. R. Co.*, 67 Southern, 262, we find that—

"In considering the origin of the fire, it is immaterial whether the fire caught on or off the right of way."

And in *Cantlon* v. *Eastern Railway Co.*, 45 Minn. 481, it is said:

"Evidence that there was combustible material on ·the right of way—dry grass—was proper; for that might be taken into consideration in measuring the degree of care necessary to be exercised in operating the engine."

See also *Butcher* v. *Vaca Valley & C. L. R. Co.*, 5 Pac. 359, 67 Cal. 518, and *Florida East Coast R. R. Co.* v. *Welsh*, 44 Southern, 250.

We may mention in passing that Thompson, in section 2231, *supra,* relied upon by appellee, simply says that "the negligence of the railway company whereby fire is communicated to adjacent premises may consist," among other things: "(3) in not keeping its right of way free from combustible materials; (4) in operating its locomotives so as unnecessarily to scatter fire." He does not state, nor is it a necessary inference from the language used, that these different

elements must be considered in all cases and under all circumstances as separate and independent causes of action.

And upon the question of amendment and variance, sections 2365 and 2379 read as follows:

"2365. As the complaint may be predicated on negligence in one particular, such as the use of defective appliances to prevent the communication of fire, and as the evidence may disclose negligence in another particular, such as negligence in running the engine, or negligence in allowing combustible material to accumulate upon the right of way, or negligence in failing to use the proper exertions to arrest the spread of the fire after it has been set, there is obvious propriety in allowing the plaintiff to amend his complaint after the evidence is in, subject, of course, to the right of the defendant to a continuance if the amendment works surprise to it. Where, at the trial of such an action, both parties gave testimony, pro and con, as to a defective spark-arrester and ashpan, and as to the accumulation of dry grass and weeds on the defendant's right of way, though no such negligence was alleged in the complaint,—it was held proper, under a statute, to permit the plaintiff, after jugdment, to amend his complaint by alleging negligence in these particulars. The statute was the usual one, authorizing the court, at any time, to permit either party to amend a defect in his pleading, upon such conditions as the court may prescribe."

"2379. The propriety of admitting or excluding evidence as not being relevant to the issues, may be varied by the conduct of parties on the trial. They may abandon the paper issues and try the case as though an issue not raised by the pleadings were before the court, —in which case a party taking this course may waive his right to object to evidence on the ground that it does not support any allegation made by the opposite party in his pleading. For example, in an action of the kind under consideration, where the petition did not allege that the fire was scattered in consequence of the locomotive being defective, but counsel for the defendant tried the case on the assumption that the extent of the defects in the locomotive was an issuable fact,—it was held that the defendant could not object to evidence introduced by the plaintiff tending to show that the spark-arrester on the locomotive was defective. In the same case the petition alleged that the fire was communicated by the negligent operation of the locomotive of the defendant, but did not allege that

the locomotive was defective in respect of its appliances for pre-
venting the scattering of fire. It was, nevertheless, held that the
plaintiff might prove that the fire escaped through the spark-ar-
rester, though such evidence tended to show that the spark-arrester
was defective.''

And—

''In another case where a petition in an action against a rail-
road company for damages resulting from fire alleged that the fire
was negligently communicated from one of the defendant's engines
to the grass growing along the track, it was held not error to per-
mit an amendment, more than seven years after the filing of the
original petition, by adding that the company was negligent in per-
mitting dry vegetation to accumulate and remain on the right of
way where the fire was set out, as the amendment did not set out
a separate and distinct cause of action.'' White, Supplement to
Work above mentioned, page 431, 2365.

The syllabus to *Texas & Pacific Ry. Co.* v. *Gains,* 26 S.
W. 873, reads in part as follows:

''A petition alleged that fire was emitted from defendant's loco-
motive through the gross negligence of defendant's employe pro-
pelling the same, and carelessly and negligently set fire to the grass
on plaintiff's land, and that the fire was caused by the negligence
and carelessness of defendant's employe in operating the locomotive.
Held, that the petition did not restrict the proof to the mere hand-
ling of the locomotive by the engineer, irrespective of the defective
character of the engine for preventing the escape of fire.''

This case is cited as authority for the opening paragraph
of the opinion in *San Antonio & A. P. Ry. Co.* v. *Home Ins.
Co. of New York,* 70 S. W. 999, which reads thus:

''The petition alleged negligence of the railway company in negli-
gently operating its engine so as to permit the escape of sparks from
its engine which set fire to certain cedar timber upon its right of
way. This was a sufficient allegation of negligence, and admitted
of proof not only of the careless handling of the engine, but also of
insufficient construction and equipment of the engine.''

And from the head notes to *Brush* v. *The Long Island*

*Railroad Company,* 10 Appellate Division, 535, affirmed without opinion in the Court of Appeals, 53 N. E. 1123, we quote the following:

"Where the complaint, in an action based upon the defendant's negligence, alleges that the defendant, a railroad company, 'so negligently and carelessly managed a fire, which it intentionally kindled and maintained in a certain locomotive, that the fire came into and upon the said premises of the plaintiff,' liability may be established against the defendant by proof that it used a defective spark-arrester upon its locomotive.

"Where there is proof that the fire in question started in briars, dead grass and dry leaves lying near the track, the court may properly charge the jury that the corporation is liable if it permitted the fire, which escaped from the engine, to communicate to stuff that had been allowed to collect so near the track as to make it a source of danger.

"In such a case, evidence as to the starting of the fire in accumulated leaves and cut grass on the defendant's land is competent, although there is no specific reference in the complaint to the existence of this precise agency in the spread of the fire."

These are but instances indicating that cases of this kind constitute no exception to the broader proposition stated in the following text:

"It is a general rule that a variance between allegations and proof, to be fatal, must be such as to mislead the adverse party to his prejudice in maintaining his action or defense on its merits. The courts have been very liberal in giving effect to laws that permit variances to be disregarded, and amendments to be made conforming pleadings to proof. Accordingly, they generally regard technical variances as cured by such amendments, or as waived by proceeding to trial or reference without raising the objection." 21 R. C. L. 611, 153.

Sections 136, 137 and 142 of our Code of Civil Procedure are set forth in full in *People* v. *Zamorano,* 28 P. R. R. 675, and need not be recopied here.

The plain purpose of these provisions is to promote the expeditious administration of substantial justice; and, if

permitted to operate, they are most conducive to that end. Keeping this in mind, courts cannot be too careful to avoid any attempt to repeal such enactments by judicial legislation in the guise of statutory construction.

As indicating the trend of modern thought along these lines, including the idea of what is required of a defendant who desires to avail himself of a variance between the pleading and the proof, we may add the following references:

*Standard Oil Co.* v. *Brown,* 218 U. S. 84; *Chicago, M. & St. P. Ry. Co.* v. *Voelker,* 129 Fed. Rep. 529; *Atlantic & Pacific Railroad* v. *Laid,* 164 U. S. Rep. 393; *Hedstrom* v. *Union Trust Co.,* 7 Cal. App. Rep. 278; Pomeroy's Code Remedies, page 636; *Maionchi* v. *Nicholini,* 82 Pac. Rep. 1052; *Duke* v. *Huntington,* 130 Cal. 272; *Pollitz* v. *Wickersham,* 150 Cal. 238; *Abner Doble Co.* v. *Keystone Consolidated Mining Co.,* 145 Cal. 490; *Wilcox* v. *Newman,* 190 Pac. 138; *Long* v. *Pocahontas Consol Collieries Co.,* 98 S. E. 289; Thompson on Trials, Volume 2, 2310, page 1568; *Davey* v. *Southern Pacific Co.,* 116 Cal. 325; Thompson's Commentaries on the Law of Negligence, Volume 6, 7473, page 517.

In the case at bar not only is the record absolutely barren of objection or exception, but in so far as the evidence in regard to the existence of dry grass on the right of way points to negligence in this regard as an independent ground of recovery rather than to the mere fact that the fire was communicated first to such combustible material spreading thereupon to the cane, or to the greater degree of care in the management and operation of defendant's locomotive required by the circumstances, this aspect of the case was brought out, emphasized and developed not so much by plaintiff in the first instance as by counsel for defendant on cross-examination.

Manuel Santiago, the first witness, states simply that the dry pasture between the track and the cane caught fire and the fire then spread into the cane. It is only on cross-ex-

amination and thereafter on re-direct that he goes into details about the burning cinders, the obligation of the company to keep the right of way clean and the neglect of its duty in this regard.

The next witness, Figueroa, mentions the bare fact that the live cinders set fire to the dry grass between the track and the cane, whence the fire, in spite of the efforts made to extinguish it, spread into the cane.

Jorge Martínez, on direct examination, does not even mention the dry grass nor definitely state that the fire originated on the right of way. It is the defendant on cross-examination who elicits the information that the embers just outside the rail set fire to the dry grass; that the fire then spread to the cane, and that the company is under obligation to keep down the grass on its right of way.

Nowhere in any of the testimony, save as above indicated, is there the remotest suggestion of a duty to keep the right of way free from combustible material and of an omission to perform that duty. Nowhere does the record disclose that by objection to the evidence, motion for nonsuit, oral argument in submitting the case or otherwise, before the actual rendition of judgment, was the question of variance, to say nothing of surprise or prejudice to defendant by reason thereof, even suggested to the trial court.

The testimony leaves no room for reasonable doubt as to the drought, the prevalence of high winds, the origin of the fire upon the right of way within a few inches of the rail and the rapidity with which the blaze started and spread immediately following the passage of the train. It seems quite clear that the district judge did not consider at all, nor base his decision in any degree upon, the testimony of witnesses for the defense. Unless we are to assume that the statement, *supra,* does not contain the true reasons underlying the judgment appealed from, that point was never reached. For this reason, and in view of the disposition to

be made of the case, we express no opinion as to the weight of the testimony for the defense in so far as the same may be regarded as tending to meet the *prima facie* case as made by plaintiff in showing that the fire was caused by sparks or embers from a passing engine in the circumstances above mentioned as indicating the degree of care that should have been exercised by defendant.

Looking at the case, therefore, from this point of view, there was no failure of proof as to negligence and that the court below took this view of the matter seems to be reasonably clear. The trial judge does not intimate that there is any conflict in the evidence as to the origin of the fire nor does he question the veracity of the witnesses for plaintiff. Their testimony is practically uncontradicted. If they speak the truth, the origin of the fire is established beyond all cavil, and this, as we have shown, is enough to constitute a *prima facie* case. If the court below, without challenging this testimony, meant to hold otherwise, then it erred.

But we think the statement of the trial judge means only to say that, in so far as the evidence tended to show that the fire started in dry grass on the right of way of defendant, a new cause of action not alleged in the complaint was established and that this was a fatal variance.

In either event, it is obvious that the judgment should not be permitted to stand. And in view of the conclusion reached upon this branch of the case we need not consider the questions involved in the appeal from the order overruling the motion for a new trial.

The judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.