PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JUAN BAUTISTA GALARZA ET AL., Defendants and Appellants.

No. 4883. Argued April 26, 1930.—Decided December 12, 1930.

*R. Aliles Moreu* and *Guillermo S. Pierluissi* for appellants.  *James R. Beverley, Attorney General* and *Arturo Ortiz Toro, First Assistant Attorney General,* for appellee.

Mr. Justice Texidor delivered the opinion of the Court.

The manner in which the most discussed of the errors assigned in this case is presented, and the confusion that might arise from a reading of the arguments of the parties, move us to transcribe in full the allegations of the complaint and of the answer.

The following allegations are set forth in the complaint:

1.—That The People of Puerto Rico is a body politic constituted as such by virtue of the Jones Act, with power to sue; and that the defendants Juan Bautista Galarza, Crescencio Martínez, and Faustino Devara are of age and residents of Barros, with capacity to sue and be sued.

''2.—That the plaintiff The People of Puerto Rico, within the year next preceding the filing of this complaint was and is now in the real and actual possession, as owner (with the exception of the small parcel described in the SECOND CAUSE OF ACTION), of the following property, described thus: 'A RURAL PROPERTY situated in the ward of Ala de Piedra (at the place called "Guineo") of the municipal district of Barros, having an area of 96.95 acres (*cuerdas*), equivalent to 38 hectares, 10 ares and 34 centiares.  It is bounded on the north by the Bauta River, also known as Toro Negro; on the south by a ridge making the boundary line between Juana Díaz and Barros, cutting off land from the Quindaleza plantation of José Oliver and Francisco Luna; on the east by land of Emilio Esteban, and on the west by land of Juan Bautista Galarza.'

''3.—That on or about March 17, 1928, the defendant, Juan Bautista Galarza, acting by himself and through his servants, (*peones*) and particularly through the other codefendants, entered the property above described, cutting down thereon more than two hundred and fifty trees, of the varieties known as 'mesa,' 'mantequero,' and claiming ownership of the said property, he has prohibited Dolores Cosme, who is a watchman employed by The People of Puerto Rico on the said property, to cut timber and to cultivate the land, threatening him with eviction therefrom by force.

"4.—The defendant, Juan Bautista Galarza, acting by himself or through his subordinates and servants and particularly through the other codefendants, intends to disturb the plaintiff in the possession and enjoyment of the 96.95–acre property above described, 'and threatens to continue the cutting of timber thereon.

"SECOND CAUSE OF ACTION.

"1.—The first and second averments of the FIRST CAUSE OF ACTION are reproduced.

"2.—That the defendant, Juan Bautista Galarza, acting by himself and through his servants, particularly the other codefendants, on or about March 17, 1928, dispossessed the defendant of a parcel of land located within the property described in the FIRST CAUSE OF ACTION and of which it is an integral part, having an area of approximately five hundred square meters, in the shape of a rectangular poligon measuring 25 meters in front by 20 meters deep, measured from corner to corner, marked by four 'mesa' stakes. The parcel in question is located toward the north side of the property described in the FIRST CAUSE OF ACTION and about thirty-six meters from the house of Dolores Cosme, who is the plaintiff's watchman.

"3.—That on the said parcel of five hundred square meters above described, the defendant, Juan Bautista Galarza, by himself and through his servants and particularly the codefendants, has begun to build three houses measuring respectively 6.64 meters by 4.98 meters, 4.98 by 3.32 meters, and 4.15 by 2.90 meters, driving the upright posts for the same and building the frames."

## The following allegations are contained in the answer:

"First: They admit the first averment of the complaint.

"Second: They specifically deny that The People of Puerto Rico, within the year next preceding the filing of the complaint, or at any other time, was or is at present in the real and actual possession, as owner or otherwise, of the property which is described or of any part thereof, to wit: 'A RURAL PROPERTY situated in the ward of Ala de Piedra (at the place called "Guineo") of the municipal district of Barros, having an area of 96.95 acres (*cuerdas*) equivalent to 38 hectares, 10 ares and 34 centiares. It is bounded on the north by the Bauta River, also known as Toro Negro; on the south .by a ridge making the boundary line between Juana Díaz and Barros, cutting off land from the Quindaleza plantation of José Oliver and Francisco Luna; on the east by land of Emilio Esteban, and on the west by land of Juan Bautista Galarza.'

"Third: They specifically deny that on or about March 17, 1928, or at any other time, the defendant, Juan Bautista Galarza, by himself and through his servants and particularly through the other codefendants, or through any other person, entered the property described, cutting down thereon more than two hundred and fifty trees, or any number of trees, such as 'mesa,' 'mantequero,' or 'camasey' trees, or any other class of trees; they likewise deny that, should there have been any cutting of timber, such cutting has continued without interruption; they also deny that the said defendant, assuming ownership of the property in question, has forbidden Dolores Cosme, a watchman in the employ of The People of Puerto Rico, to cut timber or to cultivate the land; they also deny having ever threatened to remove him by force from the property in question. They allege on the contrary that, if Juan Bautista Galarza or his employees have ever cut timber or exercised any other act of ownership, this was done within a property of 93 acres which is bounded on the north by land now belonging to Emilio Esteban; on the south by Francisco Figueroa and Flor Galarza y Torres; on the east by Casimiro Figueroa and Domingo Olivieri; on the west by the Toro Negro River and the Succession of Julio Olivieri.. This property is located in the ward of Ala de Piedra of Barros, Puerto Rico, and the defendant, Juan Bautista Galarza y Torres, has the full ownership thereof.

"Fourth: They specifically deny that the defendant, Juan Bautista Galarza, by himself or through his subordinates and servants particularly through the other codefendants, or through any other person or persons, intends to disturb the plaintiff in its possession or enjoyment of the property of 96.95 acres above described, and they likewise deny that they are threatening to continue cutting any timber thereon; on the contrary, they specifically and expressly deny that The People of Puerto Rico is the owner of the property of 96.95 acres described in the complaint and in the second paragraph of the answer, and allege that if there has been any cutting of timber, it has been done on the 93–acre property described in the third paragraph of his answer and belonging in full ownership to the defendant, Juan Bautista Galarza y Torres.

"ANSWER TO THE SECOND CAUSE OF ACTION

"FIRST: They admit the first averment of the second cause of action.

"SECOND: They specifically deny that The People of Puerto Rico, within the year next preceding the filing of this complaint or at any

other time, has ever been or is now in the real and actual possession, as owner or otherwise, of the property described as follows: 'A RURAL PROPERTY situated in the ward of Ala de Piedra (at the place called "Guineo") of the municipal district of Barros, having an area of 96.95 acres (*cuerdas*) equivalent to 38 hectares, 10 ares and 34 centiares. It is bounded on the north by the Bauta River, also known as Toro Negro; on the south by a ridge making the boundary line between Juana Díaz and Barros, cutting off land from the Quindaleza plantation of José Oliver and Francisco Luna; on the east by land of Emilio Esteban, and on the west by land of Juan Bautista Galarza.'

"THIRD: They specifically deny that defendant Juan Bautista Galarza, by himself or through his servants, particularly the other codefendants, or through any other person, on or about March 17, 1928, or at any other time, dispossessed the plaintiff of a parcel of land located within the property described in the first cause of action and of which it is an integral part; they specifically deny that such parcel, should it exist, forms a part of the said property; they specifically deny having dispossessed the plaintiff of the said parcel or of any part thereof; they deny that the alleged parcel has an approximate area of five hundred square meters, or that said parcel has the shape of a rectangular polygon or any polygon whatever, measuring 25 meters in front by 20 meters deep, or any other measurements; they deny that the said distances are measured from corner to corner; and they deny that said corners are marked by four stakes of 'mesa' wood or any other kind of wood. They specifically deny that the parcel in question is located toward the north side of the property described in the first cause of action, or anywhere else; or that it is situated some 36 meters from the house occupied by plaintiff's watchman, Dolores Cosme, or at any other distance or place.

"FOURTH: They specifically deny that the defendant, Juan Bautista Galarza, by himself or through any of his servants, particularly the codefendants, or through any other person, has begun to build three houses measuring respectively 6.64 meters by 4.98 meters, 4.98 meters by 3.32 meters and 4.15 meters by 2.90 meters, or any other houses of any dimensions whatsoever, upon the parcel of five hundred square meters in question or upon any other parcel; they specifically deny that they are driving posts therein or building any frames.

"They allege and maintain on the contrary that, if any houses are being constructed, they are being or have been so constructed within the 93-acre property belonging to the defendant, Juan Bau-

tista Galarza y Torres, described in the third paragraph of the answer relating to the first cause of action; but never on any land belonging to the plaintiff."

The answer was verified thus:-

"VERIFICATION

"Now comes Juan Bautista Galarza y Torres, duly sworn, and says: that he is the defendant in the present action, that is, one of the defendants herein; that he is of age, a property-owner and resident of Juana Díaz, P. R.; that he has carefully read the above-entitled answer and that the same has been drafted taking as a basis the instructions given by him to his attorney; that all the facts alleged are true of his own and personal knowledge and those that are controverted he avers not to be true of his own and personal knowledge, as to his denial thereof, and he specifically denies them of his own and personal knowledge."

"Ponce, P. R., June 20, 1928.

"(Signed)   Juan B. Galarza."

The complaint to which we have referred was filed in the District Court of Ponce and was answered in the manner above shown. In this injunction (*interdicto*) proceeding for the retention or recovery of possession, The People of Puerto Rico prayed to be protected in the possession it already had and to be restored to the possession of which it had been deprived.

The plaintiff filed a motion to strike out the third paragraph of the answer to the first cause of action and the fourth paragraph thereof to the second cause of action, in so far as defendant's ownership of the property is therein alleged.

The People then moved for a judgment on the pleadings, and included in its motion the claim that the affidavit to the answer was defective. The defendant moved for leave to amend this affidavit, which the court granted, but the plaintiff, by a motion, objected to the amendment.

On November 27, 1928, the court made an order granting the motion of the plaintiff for a judgment on the pleadings,

and such a judgment was accordingly rendered for plaintiff. From that judgment the present appeal has been taken.

We shall first pass upon such of the errors assigned as can be readily disposed of.

The fourth assignment relates to the alleged error in striking from the answer the paragraphs, wherein the defendant Galarza pleaded ownership of the property.

It has been repeatedly held by this court and by the Supreme Court of Spain that in restitutory interdicts (*interdictos posesorios*), equivalent to the injunctions to retain or recover possession of our law, the ownership or title is not in issue. Since their remote Roman origin, interdicts have been nothing else than a remedy for the preservation and protection of the possessory status, or as expressed differently by text-writers, for the possessory protection. The particular rights to which they are applicable, and the social and legal necessity for protecting the possession, account for the speediness of the remedy and even for eliminations of proceedings and steps which would not be justified in ordinary actions.

It has been frequently stated by this court that in injunction proceedings relating to the possession, ownership can not be the subject of contest or proof. See *Ortiz* v. *Silva et al.,* 28 P.R.R. 357; *Solís* v. *Castro,* 36 P.R.R. 94; *Oliver et al.* v. *González et ux.,* 37 P.R.R. 868, and *Vicente* v. *Ortiz,* 38 P.R.R. 95. The question in issue is not the ownership, but the fact of actual possession. To settle the right to the possession, to determine the title, a summary and speedy proceeding would not be adequate; nor would any judgment rendered in such cases be a sufficient adjudication.

For that reason, any allegation of title, whether general and vague or specific and precise, is not only unnecessary but prejudicial and dangerous, since it might give rise to an effort to produce evidence to prove it. Therefore, the proper remedy in the present case was the striking out which the court correctly decreed.

The first error assigned is that the court rendered judgment on the pleadings based on a complaint which fails to state facts sufficient to constitute a cause of action.

The plaintiff alleges in its complaint possession of a certain immovable, and acts of disturbance and dispossession on the part of the defendants in cutting trees on the said property, threatening the watchman and occupying a part of such property by building houses thereon. The allegations can not be expected to contain the meticulous and perhaps redundant details that the defendants seem to demand. The complaint must be worded in accordance with the law; but it should be borne in mind that it is going to be read, answered and ultimately passed upon by men who, besides being familiar with the law, are sufficiently informed not to require that the allegations be explained to them like a lesson to schoolboys. This does not imply any justification for the use of vague, indefinite, or ambiguous allegations. Suffice it to say that an allegation worded in a clear and simple manner, not at variance with the statute, is enough.

The allegations of the complaint contain the essential facts required by the law which governs this proceeding.

The second, third, and fifth errors assigned relate to the evasive character of the answer, to the application of the doctrine of this court in *Somonte* v. *Mimoso,* 27 P.R.R. 368, and to the fact that judgment was rendered on the pleadings without allowing the answer to be amended.

A lengthy argument is made as to whether or not the answer was evasive.

We have transcribed the allegations, which can not be considered as perfect. It becomes necessary to set out the general principles and, in the light thereof, to see whether an issue has been raised on which a final adjudication could be made.

The applicable law is as follows (section 110, Code of Civil Procedure):

"The answer of the defendant shall contain:

"1. A general or specific denial of the material allegations of the complaint controverted by the defendant.

"2. A statement of any new matter constituting a defense or counterclaim. If the complaint be verified, the denial of each allegation controverted must be specific, and be made positively, or according to the information and belief of the defendant. If the defendant has no information or belief upon the subject sufficient to enable him to answer an allegation of the complaint, he may so state in his answer, and place his denial on that ground. If the complaint be not verified, a general denial is sufficient, but only puts in issue the material allegations of the complaint."

The first important point that appears is the requirement that each material allegation of a verified complaint must be specifically denied and the denial must be made positively, or according to the information and belief of the defendant. The jurisprudence has construed this statutory provision uniformly and consistently. The purpose in view is that the case be tried upon really controverted facts. Any effort to evade an open and full traverse must be discarded. But this does not mean that the rule is such that it makes it impossible to draw an answer not subject to objections. What is essentially required thereby is the drafting of an open and intelligible denial.

Any exaggeration in applying this rule would lead to something not permissible in law: an absurdity. And it is the province of the courts to prevent it.

It would seem advisable to quote from our own jurisprudence what may serve as a guide in deciding this point.

In *Guzmán* v. *American Railroad Company,* 29 P.R.R. 375, 381–382, the following was cited with approval:

"The rule forbidding negatives pregnant, however, is affected by the liberal rules of construction and amendment of pleadings that prevail generally under the code."

And also the following:

"Where a negative pregnant controverts the allegation to which it relates, the defect may be regarded as one of form only and waived if not objected to before trial. Elton v. Markham, 20 Barb. (N.Y.)

343; Armstrong v. Danshy, 75 Hun. 405, 27 N.Y.S. 60. Especially, as is pointed out in the reported case, will the defect not be regarded as fatal when it does not appear that the opposing party has been misled thereby to his injury. Pigeon v. Osborn, 4 Per. & Dav. (Eng.) 345, 9 Dowl. 511; Hershey v. O'Neill, 36 Fed. 168; First Bank of Texola v. Terrel, reported in full, post, this volume at page 681.''

In *Aguayo* v. *Vázquez*, 33 P.R.R. 873, the rule of liberal construction was followed by this court, which had still more definitely upheld it in *Mazarredo* v. *Echevarría et al.*, 32 P. R.R. 464.

The difficulties in answering a verified complaint would be insurmountable if the doctrine just cited did not prevail. It is easy to find text-books and authorities defining when an answer is defective or even fatally defective; but no authority, commentator, or text-writer has given the formula of a good answer. Of course, we do not refer to those cases where the evasive character of the allegations in the answer more or less clearly appears; but to those where a denial was intended and such denial has been defectively expressed.

The allegations of the answer in the case at bar set forth a specific denial of the facts alleged by the plaintiff, except as to a certain particular hereinafter mentioned. For instance, in the ''Second'' paragraph it is denied that The People of Puerto Rico within the year next preceding the complaint, or at any other time, had the actual possession, as owner or otherwise, of the property described. Really, it is difficult to make a denial in a different way.

It is true that in dealing with the cutting of timber and after denying that the defendants, by themselves or through others, had committed the acts charged, they went on to allege that in the event of their cutting timber or exercising any acts of ownership, they did so within their 93–acre property. This part of the allegation is not good; but the denial had been made before in a sufficient form.

As to the second cause of action, the defendants "admit the first averment of the second cause of action." And it appears that the first averment referred to was worded in the complaint as follows:

"1. The first and second averments of the first cause of action are reproduced."

The second averment thus reproduced relates to the actual possession of the property of 96.95 acres involved in the instant case.

Much stress is laid by the appellee on this admission. But after noting that in answering the first cause of action such possession was denied, it will be readily understood that when drafting the answer to the second cause of action, an error, easily corrected, has been made. Such an error can not serve as the basis for a judgment determining the rights of the parties. In such cases, an opportunity to amend, even though not requested, is the best way to proceed in order to reach a proper solution. Not that it is incumbent on the courts to concern themselves with the manner in which attorneys should conduct their cases, but with the cases actually before them and with the full adjudication of the questions of fact and of law presented for their determination, and in this respect a discreet and cautious liberality is always advisable.

The error has been properly assigned and we hold that it has been committed.

It is unnecessary to go into other questions raised by this appeal, as the determination of the above error is sufficient for a reversal of the judgment.

The judgment appealed from must be reversed and the case remanded to the District Court of Ponce with directions to allow the defendants to amend their answer within ten days from the date of the receipt by the District Court of Ponce of the judgment of this court.