GUZMÁN, DEMANDANTE Y APELANTE, *v.* AMERICAN RAILROAD COMPANY OF PORTO RICO, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito sobre indemnización.

No. 2178.—Resuelto en abril 29, 1921.

ALEGACIONES—NEGATIVA QUE CONSTITUYE ADMISIÓN.—Cuando una negativa constituye una admisión niega la alegación a que se refiere, el defecto puede ser considerado como de forma solamente y renunciarse a él si no se ha hecho objeción antes del juicio; y tal defecto no será considerado como fatal cuando no aparece que la parte contraria ha sido inducida a perjuicio.

DAÑOS Y PERJUICIOS POR INCENDIO—NEGLIGENCIA DE COMPAÑÍAS FERROCARRILERAS—INCONGRUENCIA ENTRE ALEGACIONES Y PRUEBA.—Cuando la demanda reclamando daños y perjuicios por negligencia se funda en que por haber sido manejada descuidadamente por sus empleados, una locomotora de la demandada dejó escapar chispas que encendieron las plantaciones del demandante, y la prueba demuestra que las chispas incendiaron primeramente las yerbas secas que había en la vía férrea, la incongruencia no es fatal y tiene derecho el demandante a enmendar su demanda después de practicada la prueba a reserva de conceder la suspensión del juicio si la enmienda produce sorpresa al demandado.

ID.—ID.—PESO DE LA PRUEBA—EVIDENCIA SUFICIENTE PARA HACER UN CASO PRIMA FACIE.—En general el peso de la prueba incumbe al demandante para establecer aquella clase de negligencia que alega en su declaración, demanda o

petición. Cumpla él o no con esta obligación probando que el fuego que destruyó su propiedad se propagó de una locomotora de la demandada, es cuestión sobre la cual el criterio de las cortes está dividido con una fuerte preponderancia en favor de la proposición de que sí cumple.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. A. A. Vázquez.*

Abogados de la apelada: *Sres. G. H. Moscoso* y *F. G. Pérez Almiroty.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

El quinto y octavo párrafos de la demanda presentada en este caso son los siguientes:

"V. Como a las 2 y 15 minutos p. m. del 4 de febrero de 1919, un tren de carga y pasajeros, propiedad de la demandada, se dirigía de Mayagüez a San Germán, P. R., y al atravesar dicho tren la finca descrita, la locomotora del mismo, que es la No. 67, fué manejada tan negligentemente por los empleados de la demandada, que allí y entonces se desprendieron de dicha locomotora materias encendidas que comunicaron fuego inmediatamente a las cañas que se mencionan en el hecho 11 y ocasionaron un incendio que se extendió por el cañaveral y dañó totalmente 10 cuerdas de dichas cañas, y sus semillas, con quemaduras y chamuscamientos, dejándolas completamente inútiles para el crecimiento y para la producción."

"VIII. El incendio ocurrido en las cañas propiedad del demandante y los perjuicios por éste sufridos con tal motivo, en la forma y manera que han sido relacionados, han tenido como consecuencia directa inmediata y próxima la negligencia de la demandada por conducto de sus empleados."

El párrafo tercero de la segunda contestación enmendada es el que a continuación se copia:

"3. La demandada por información y creencia específicamente niega, que a la hora del día, mes y año que en la demanda se mencionan, la locomotora No. 67 de su propiedad, conduciendo un tren de carga y pasajeros desde Mayagüez a San Germán, P. R., fuera en momento alguno durante su recorrido, manejada tan negligentemente por los empleados de la demandada, encargados de conducirla, por cuyo motivo se desprendieran de dicha locomotora materias encendidas que comunicaran fuego a las cañas que se mencionan en el

hecho 5º. de la demanda y que produjeran el incendio en la forma y extensión a que se contrae el mencionado hecho 5º. de la demanda, negando por consiguiente éste, en todas sus partes.''

Los hechos declarados probados por la corte inferior y la teoría por virtud de la cual fué desestimada la demanda, son los expresados por el juez sentenciador en los siguientes párrafos de su opinión:

''En este punto entiende la corte, que la prueba aportada al juicio por el demandante, no es suficiente para sostener las dichas alegaciones de la demanda, pues en ésta se hace descansar la imputación de negligencia en el manejo negligente de la locomotora en cuestión; de cuyo hecho en sí, nada nos dice la prueba. Esta tiende más bien a demostrar, que el fuego comenzó de modo muy distinto a la forma y manera como en la demanda se alega. Esta variante a juicio de la corte, es fatal. (Véase 33 Cyc. 1352, nota 96).

''En resumen, y siendo así que en la demanda se establece como base de esta acción, una causa de negligencia y de la prueba resulta otra causa distinta de la alegada, la corte tiene necesariamente que llegar a la conclusión de que, la demanda en este caso, no puede sostenerse. (Véase 33 Cyc. pág. 1356, párrafo c. y nota 23 de la pág. 1357).''

La prueba testifical, según revelan los autos, en tanto es pertinente a la cuestión así promovida, es en sustancia la siguiente:

''Manuel Santiago, a eso de las dos y media de la tarde del día 4. de febrero se encontraba con José Miguel Figueroa e Isaac Torres, mayordomo de la finca perteneciente al demandante en la romana que tiene la hacienda ''Coto'' como a cuarenta metros más arriba de donde empezó el fuego, cuando empezó a subir la máquina del tren de correo que atravesaba la finca del demandante cogió impulso y pasó así el tren al lado de nosotros; nosotros estábamos en la misma orilla de la vía y al momento de pasar el tren sentimos que dijo uno ¡Fuego! y seguido miramos y corrimos; que Jorge Martínez que es un encabezado de la siembra en esa finca también estaba presente; que todo el pasto que hay entre la vía del tren y la caña estaba seco y se prendió y extendió el fuego y entró a la pieza de caña y como no teníamos con que apagar cogió proporción por toda la orilla de la

vía, que estaba llena de hierbas secas, y entró a la pieza de caña;
que José Miguel Figueroa mandó un peón a la hacienda a tocar la
campana y pudimos contener el fuego y a pesar de ello se quemaron
diez cuerdas; que esa misma tarde del incendio después de haber
apagado el fuego fuí hasta San Germán y pregunté al Jefe de Esta-
ción qué máquina era la que llevó el correo y él llamó a Mayagüez
y dijo que era la máquina 67; que la hacienda ''Coto,'' donde la
Guánica Centrale tiene instalada la romana arriba descrita queda
entre la carretera que conduce de Mayagüez a San Germán y la vía
del ferrocarril y el testigo estaba allí esperando que llegaran unos
carros de caña suyos para pesarlos y el mayordomo de la finca colin-
dante estaba también allí; que el tren venía de abajo y cuando fué
a pasar un paso a nivel sonó y el testigo y su  compañero miraron
en esa dirección; que después que el tren había pasado como a cua-
renta metros, gritó un muchacho llamado Martínez, ¡Fuego! y corrie-
ron; que el tren viene primero de Filial Amor y viene hacia Bi-
furque y al pie de Bifurque fué; que la finca queda entre Filial
Ámor y la romana y la romana colinda con el pie de la finca, a quince
metros de la finca; que antes de llegar el tren a la romana todo es
línea recta desde Filial Amor y llano; que el testigo vió el tren desde
que salía de Filial Ámor porque estaba entre la vía y la romana y
venía echando humo y la máquina venía explotando; que esa explo-
sión produce fuego al exterior, echa chispas muchas veces y ese día
las echó por debajo de la máquina, y ellos llegaron al momento y
las encontraron en el suelo, eran unos pedacitos de carbón; que el
testigo sintió a ese joven que dijo 'Fuego' y que cuando llegaron a él
dijo 'Aquí es' y no había nadie allí y encontraron los carboncitos allí
donde había dado fuego; que ese no es camino real sino un sitio
para la vía del tren solamente; que los carbones estaban a la iz-
quierda a la banda allá del rail, a la parte afuera del rail; que de
la romana al punto donde empezó el fuego habrá 35 ó 40 metros y
de la vía a la caña del demandante habrá cinco o seis metros; que
de los carbones al rail izquierdo no había medio metro porque la
hierba daba contra la vía, algunas 20 ó 24 pulgadas; que la yerba
que había allí era matojo seco, es un pastizal entre la vía y la caña
que se forma allí y crece, pero la compañía tiene la obligación de
limpiar siempre ese pastizal; que el centro de la vía estaba limpio;
que allí hay una forma de cascajillo o tosca clara; que de la romana
hasta Bifurque habrá 50 ó 60 metros y un poco más arriba de
Bifurque la máquina empieza a desarrollar; que hasta Bifur-
que es llano; que cuando llegaron al sitio tomaba proporción el

fuego; que los carbones encendidos que encontraron eran como del tamaño de un grano de maíz; que vieron varios pedazos de carbón y le dieron con los pies; que por el sitio donde ocurrió el incendio ya viene la máquina desarrollando, por eso es que viene explotando; que la compañía hay veces que está cuatro o cinco meses sin mandar a cortar esa yerba y en el mes de enero ese matojo se seca y la yerba da hasta sobre la banda de la vía; que la rueda de la máquina la va cortando y así estaba el día del fuego y los carbones vinieron sobre la yerba y como la paja de caña venía contra la yerba esa cogió fuego. Había mucha yerba seca porque fué en enero y febrero cuando no llueve y hacía mucha seca y mucho viento; que por ahí no pasa gente, lo único que hay abajo un paso a nivel y después a lo largo la carretera, pero está como a diez o doce metros de la vía; que cuando el testigo llegó al sitio encontró los carbones en la cuneta en la orilla del relleno, a 16 pulgadas del rail y de la vía a la caña hay una distancia como de cinco metros.

"José Miguel Figueroa, mayordomo de una hacienda llamada San José, que es de don Alfredo Ramírez, y a cargo también de la finca 'Coto,' estaba entre la vía y la romana cuando oyó gritar 'fuego,' y al llegar al sitio donde estaba Jorge Martínez vió unos carbones pequeños que encendieron la yerba seca que había entre la vía del tren y la caña y que el fuego, favorecido por el viento, a pesar de los esfuerzos que hicieron para extinguirlo se propagó a las cañas del demandante, etc.; que el testigo vió los carbones cuando llegó al sitio del fuego como a una distancia de diez y seis o veinte pulgadas fuera del rail, viniendo del este para el oeste, a la derecha. Los carbones eran pequeñas partículas; que con el apuro del fuego no pudo apreciar si eran de media pulgada o como un garbanzo; que el tren venía explotando bastante porque hay una pequeña pendiente; que la locomotora que traía ese tren era bastante grande, pues le pareció una de las más grandes. Eso de explotar es que al subir una pendiente viene haciendo fuerza, viene con más velocidad. Ahí es una línea recta, pero hay una pequeña pendiente empezando antes de la romana y antes del sitio del fuego también a la parte oeste. Esta es una pendiente pequeña dentro de ese mismo llano, por eso es que viene explotando ahí.

"Jorge Martínez estaba en la finca del demandante cuando pasó el tren correo por dentro de ella y al ver salir humo se aproximó al sitio y vió que era fuego y había un viento muy fuerte. Entonces estaba José Miguel Figueroa, Isaac Torres y Manuel Santiago en la romana del 'Coto' como a treinta y cinco o cuarenta metros de dis-

tancia y el testigo le gritó que había fuego y entonces acudieron los
cuatro, pero como no podían hacer nada, José Miguel Figueroa mandó
un peón que tenía trabajando allí cerca a buscar gente y a tocar la
campana de la hacienda para recoger sus hombres y acudir al fuego;
entonces vinieron como cuarenta o cincuenta hombres; que si no es
por el auxilio de ellos se hubiera quemado mucha más caña, porque
hasta la finca del señor Ramírez se quemó como medio cuadro.   Yo
ví los carbones allí al lado de la vía del tren y yo mismo con el
zapato los ayudé a apagar.   Esos carbones eran de piedra del tamaño
de un grano de maíz y por allí no pasa otra máquina que no sea la
del ferrocarril.   Repreguntado declaró el testigo: Del sitio donde
yo ví los carbones a donde estaban estos señores habrá 25 o 40 metros.
Los carbones estaban fuera de los railes de la vía y quemaron la
yerba seca que hay entre la vía y la caña y luego el fuego se extendió
a la caña.   La finca es llana pero hay una pequeña pendiente que
empieza un poco más abajo de un puente que hay, como a cinco o
seis metros de distancia de donde pegó el fuego.   Desde Bifurque
hasta Filial Amor todo es llano, pero todo no puede ser parejo.   Yo
ví allí carbones pequeños como a 15 ó 20 pulgadas retirados de la
vía y la compañía tiene la obligación de tener talada esa yerba.''

Después de dictada sentencia desestimando la demanda,
el demandante, por el fundamento de error, inadvertencia,
sorpresa y negligencia excusable que se alega se debió a no
haber hecho la demandada ninguna objeción a la prueba adu-
cida, induciendo así al demandante a creer que la misma era
pertinente por tener relación con la negligencia alegada en la
demanda, solicitó un nuevo juicio con el fin de conformar sus
alegaciones a tal prueba.

El demandante interpone apelación contra la sentencia y
contra la resolución denegando la moción de nuevo juicio.

En el primer señalamiento de error, o sea, que la corte
erró al desestimar la demanda por la falta de prueba de la
negligencia de la demandada, el apelante además de hacer
una repetición de la prueba, insiste en efecto, en que la ale-
gada negativa del quinto párrafo de la demanda es una ne-
gativa que implica una admisión, aunque sin decir cuál es
y que como tal admite la negligencia de la demandada, ci-

tando la obra de Kerr, página 594 y copiando de ella los párrafos que se basan en tres antiguos casos de California, *Landers* v. *Bolton*, 26 Cal. 393; *Doll* v. *Good*, 33 Cal. 237, 290, y *Blankman* v. *Vallejo*, 15 Cal. 638.

La proposición como ha sido expuesta por el apelante (bastardilla nuestra) es que "una negativa en tal forma es mala, e implica una admisión *porque la demandada no puede negar por información y creencia actos personales suyos.*"

La apelada, trabada la contienda sobre la proposición como fué expresada, comienza su alegato haciendo la declaración de que "como somos en este caso la parte apelada, nuestra misión ha de limitarse a refutar la argumentación contraria según aparece ésta del alegato escrito presentado por el apelante."

Haciéndose entonces caso omiso en el alegato de la verdadera cuestión envuelta, pasa a demostrar que una negativa de tal negligencia "basada en información y creencia" es permisible y cita el caso de *Pérez* v. *Guánica Centrale*, 17 D. P. R. 963. A esto siguen otras indicaciones de qué es lo que la demanda debe alegar en cuanto a negligencia, qué prueba es admisible de acuerdo con ella; qué es lo que constituye una incongruencia, y a la regla de que una enmienda no debe constituir una causa de acción distinta y separada, y se cita al tomo 33 de Cyc. página 1351 (*b*); 1356 (*c*); 1357, nota 23; 1354, nota 8.

También hace referencia la apelada al caso de *Garrett* v. *Southern Railroad Company*, 101 Fed. 102, y *Niskern* v. *Chicago, Etc., R. R. Co.*, 22 Fed. 811, como que resuelven que en una acción contra una compañía de ferrocarriles por daños y perjuicios causados por incendio debido al manejo de sus locomotoras, trenes o vías, incumbe al demandante demostrar por una preponderancia de la prueba, la negligencia por parte de la demandada como se alega y que tal negligencia fué la causa del daño, esto es, que debido a tal negli-

gencia, el fuego se comunicó a la propiedad del demandante, por chispas salidas de las locomotoras, etc.

Se cita a Thompson sobre Negligencia, página 794, sección 2231, donde se enumeran cinco causas de acción específicas, donde se dice que no puede permitirse a un demandante elegir más de una al formular su demanda y se cita el artículo 2263 del tomo, para indicar lo que puede probar el demandante de acuerdo con las alegaciones de tal demanda, y citándose finalmente el tomo 33 de Cyc. página 1340, III;. *Steele* v. *Pacific Coast Railroad Company,* 73 Cal. 723; *Perry* v. *Southern Pacific,* 50 Cal. 578, y *Henry* v. *Southern Pacific, idem,* 176, para sostener la proposición de que—

"La mera omisión de una compañía de ferrocarriles en limpiar la yerba seca que hay en su vía, las semillas y otros materiales de combustión que se acumulan naturalmente en el terreno, no constituye negligencia *per se;* y no será culpable de negligencia la compañía y responsable por pérdidas que sean consecuencia de fuego ocasionado por chispas que enciendan tales acumulaciones, a menos que éstas sean tales que no hubieran sido permitidas por un hombre de cautela o de ordinaria prudencia en sus propios terrenos, de estar expuestos al mismo accidente."

Las reglas generales de alegaciones que tratan de la cuestión de una negativa que constituye una admisión se discuten en el caso de *Somonte* v. *Mimoso,* 27 D. P. R. 398. Véase también a Sutherland, 257, sección 417.

"La regla que prohibe las negativas que constituyen una admisión, sin embargo, ha sido afectada por las reglas liberales de interpretación y enmienda a las alegaciones que generalmente prevalecen de acuerdo con el Código." Nota a *Drennon* v. *Williams,* Ann. Cases, 1917, A. 664 p. 669.

Y en la página 675 de la misma nota, se dice lo siguiente:

"Cuando una negativa que constituye una admisión niega la alegación a que se refiere, el defecto puede ser considerado como de forma solamente y renunciarse a el si no se ha hecho objeción antes del juicio. *Elton* v. *Markham,* 20 Barb. (N. Y.) 343; *Armstrong*

v. *Danahy,* 75 Hun 405, 27 N. Y. S. 60. Especialmente como se indica en el caso anotado el defecto no será considerado como fatal cuando no aparece que la parte contraria ha sido inducida por ello a su perjuicio. *Pigeon* v. *Osborn,* 4 Per. & Dav. (Eng.) 345, 9 Dowl, 511; *Hershey* v. *O'Neill* 36 Fed. 168. *First Bank of Texola* v. *Terrel,* anotado enteramente, después de este tomo, en la página 681.''

En el presente caso el párrafo tercero de la contestación hasta el último, si es que no se incluye, lo menos que puede decirse es que no es un modelo de buena alegación. Pueda o no considerarse dicho párrafo final examinado en relación con su contexto inmediato, como que refuta la alegación a que se refiere, dentro del significado de la regla que acaba de exponerse es cosa que claramente parece estar sujeta a discusión. Pero toda vez que no se llamó la atención de la corte de distrito en ningún momento a esta cuestión de alegación y el punto se sugiere por primera vez en apelación y al parecer sin una idea muy clara del principio envuelto, difícilmente podemos concluir que el demandante ''ha sido por ello inducido a su perjuicio.''

Siguiendo ahora la línea trazada por la apelada, no indicando nada el apelante y examinando el tomo 2 de Thompson sobre Negligencia, vemos que la sección 2263 si bien no tiene por objeto considerar en primer lugar el peso de la prueba, es instructiva acerca de lo que constituye ''negligencia al correr la máquina que da lugar a que el fuego se disperse.'' Esa sección dice en parte lo siguiente (bastardilla nuestra):

''Una locomotora u otra máquina de vapor puede, desde luego, estar debidamente construída y equipada y sin embargo ocasionar fuego por la negligencia en su manejo, en cuyo caso la responsabilidad es la misma que se expresa en el capítulo anterior. El cargar demasiado la locomotora puede equivaler a tal negligencia. La máquina puede tener los medios de evitar que salgan las chispas y sin embargo haber negligencia en no manejar debidamente los limpia vías. Por tanto, no solamente se requiere que las locomotoras de una compañía de ferrocarriles sean primeramente construídas con los mejores y más reconocidos accesorios para evitar el escape del

fuego, sino que *si una de ellas ha causado daño, la demandada está en la obligación de probar que su locomotora* en la fecha del accidente estaba tanto en buenas condiciones como al cuidado de personas competentes. Y no es bastante con que la máquina estuviera bien construída y al cuidado de personas competentes sino que debe aparecer además que era manejada con cuidado ordinario a fin de evitar la propagación de chispas. En un distrito en donde debido a la sequía de la vegetación pueden fácilmente ocurrir fuegos, este cuidado ordinario exige que los empleados tengan en consideración las condiciones que prevalecen, la velocidad y dirección del viento y el peligro de las propiedades cercanas, aunque teniendo en cuenta debidamente los intereses del servicio del ferrocarril y el deber de la compañía con sus favorecedores y el público.''

La cuestión referente al peso de la prueba en este sentido se discute extensamente en las secciones 2284 y siguientes del mismo tomo. Del párrafo inicial de esta exposición, citamos lo siguiente:

''Indiscutiblemente, en general el peso de la prueba incumbe al demandante para establecer aquella clase de negligencia que alega en su declaración, demanda o petición. Cumpla él o no con esta obligación probando que el fuego que destruyó su propiedad se propagó de una locomotora de la demandada, es cuestión sobre la cual el criterio de las cortes está dividido con una fuerte preponderancia en favor de la proposición de que sí cumple.''

Y la sección 2368 dice en parte lo siguiente:

''Al principio ha de observarse que el peso de la prueba recae en el demandante para establecer, mediante una preponderancia de prueba, legalmente pertinente, que el fuego fué propagado ya por una locomotora de la demandada que pasaba o si no de su propia vía. Según la naturaleza del caso, este hecho raras veces es susceptible de prueba de testigos que vieron la verdadera propagación del fuego; pero generalmente ha de inferirse de la circunstancia de haberse propagado el fuego poco después de pasar la locomotora. Los cortes generalmente están acordes en cuanto a que la prueba de que el fuego se propagó inmediatamente o muy pronto después de pasar el tren de la demandada y que no había fuego en la vecindad antes ni ninguna otra causa aparente de fuego, es admisible, y es bastante para justi-

ficar a un jurado en inferir que el fuego salió de la locomotora que pasaba.''

Una breve exposición de los fundamentos en los cuales se basa la doctrina en cuestión puede verse en el tomo 11 R. C. L. 989, sección 41, a saber:

''El razonamiento generalmente adoptado en apoyo de la regla de que probado el origen del fuego contra la compañía de ferrocarril, incumbe a tal compañía demostrar que ha tomado todas las precauciones necesarias para evitar ocasionar tal mal, es que los agentes y empleados de la compañía saben, o por lo menos están obligados a saber que la locomotora está debidamente equipada para evitar que se escape el fuego y que ellos saben si se emplearon aparatos mecánicos para ese fin y de ser así, cuál era su clase; mientras que por otra parte, las personas que no están relacionadas con el camino y que solamente ven pasar los trenes a gran velocidad, no tienen tales medios de información, la que no está a su alcance y no pueden obtener sin gran molestia y gastos y aunque a menudo la obtienen como un favor de la compañía, la cual dentro de las circunstancias sería muy probable que se negara a dar.''

A la luz de esta regla, la sección 2363 citada por la apelada adquiere una significación nueva y peculiar.

Así también, examinando a Thompson, tomo 2, sección 2273, encontramos lo siguiente:

''La verdadera regla es que aunque no constituye negligencia *per se* por parte de una compañía de ferrocarriles permitir que materiales combustibles se acumulen en la vía, sin embargo, el permitir tal acumulación puede dar lugar a una acción por negligencia *cuando es razonablemente probable que con ella se ocasionará daños a una propiedad colindante a dicha compañía en caso de que tal material coja fuego debido a las locomotoras que pasan.*''

Y en el párrafo siguiente, por vía de ilustración, se dijo lo siguiente:

''Cuando una compañía de ferrocarriles consentía o permitía que quedara yerba en su vía por tres o cuatro meses después de terminada la estación en la cual tal yerba estaba verde o creciendo en suficientes

cantidades que pudiera coger fuego por las chispas de las locomotoras
que pasaban y comunicar el fuego a los terrenos adyacentes, se re-
solvió que esto era prueba de negligencia.''

Pero, como se indica en la sección 2280:

''Aparte de la cuestión de negligencia de la compañía al permitir
que materiales combustibles se acumularan en su vía, ha de obser-
varse que la *prueba* de la existencia de tales materiales es *pertinente*
por tener relación con la cuestión el grado de cuidado necesario en
el manejo de sus locomotoras para impedir la propagación del fuego;
puesto que, como ya se ha visto, se exige mayor cuidado que en otros
casos al manejar locomotoras a fin de evitar la propagación de fuegos,
cuando en la vía y camino se encuentran desparramados materiales
combustibles.''

En el caso de *Doppe* v. *Atlantic Coast Line Railroad Com-
pany,* 67 Southern, 262, encontramos que ''al considerarse
el origen del fuego, es inmaterial la cuestión de si el fuego
empezó en o fuera de la vía.''

Y en el caso de *Cantlon* v. *Eastern Railway Company of
Minn.,* se dijo lo siguiente:

''La prueba de que había material combustible en la vía—yerba
seca—era pertinente; pues eso podría haberse tomado en considera-
ción al apreciar el grado de cuidado necesario que ha de ejercitarse
al manejar la locomotora.''

Véanse también los casos de *Butcher* v. *Vaca Valley &
C. L. R. Co.,* 5 Pac. 359, 67 Cal. 518, y *Florida East Coast
Railroad Company* v. *Welsh,* 44 Southern 250.

De paso podemos decir que Thompson en la sección 2231,
*supra,* en la cual se funda la apelada, simplemente expresa
que ''la negligencia de la compañía de ferrocarril por la
que el fuego se propaga a propiedades adyacentes puede
consistir, 'entre otras cosas': (3) por no mantener su vía
libre de materias combustibles; (4) en manejar sus locomo-
toras de tal modo que propaguen innecesariamente fuego.''

No expresa ni es tampoco una inferencia necesaria del·

lenguaje empleado, que estos elementos diferentes deben considerarse en todos los casos y bajo todas las circunstancias como causas de acción separadas e independientes.

Y al tratar de la cuestión de enmienda e incongruencia, las secciones 2365 y 2379 prescriben lo siguiente:

"2365. Como la demanda puede fundarse en la negligencia, en uno de sus particulares, tal como el uso de aparatos defectuosos para impedir la propagación del fuego, y como la prueba puede revelar negligencia en cuanto a otro particular, así como la negligencia en correr la locomotora, o en permitir que material de combustión se acumulara en la vía, o en negligencia al no adoptar las debidas restricciones para evitar la propagación del fuego después que ha empezado, procede claramente permitir al demandante enmendar su demanda después de presentada la prueba con sujeción, desde luego, al derecho del demandado a obtener una suspensión si la enmienda le produce sorpresa. Cuando, en el juicio de tal acción, ambas partes presentaron prueba a favor y en contra, en cuanto al sombrerete para chispas y cenicero defectuosos y a la acumulación de yerbas secas y semillas en la vía de la demandada, aunque semejante negligencia fué alegada en la demanda, se resolvió que era pertinente, de acuerdo con el estatuto, permitir al demandante, después de la sentencia, enmendar su demanda alegando negligencia en estos particulares. El estatuto era el corriente, que autorizaba a la corte en cualquier momento permitir a cualquiera de las partes enmendar un defecto en su alegación, bajo las condiciones que la corte ordenara."

"2379. La pertinencia en admitir o excluir prueba por no ser pertinente a las cuestiones en controversia puede variar por la conducta de las partes en el juicio. Ellas pueden abandonar las cuestiones planteadas en los escritos y celebrar el caso como si una cuestión litigiosa que no ha sido planteada en las alegaciones estuviera presentada ante la corte, en cuyo caso la parte que adopta este procedimiento puede renunciar su derecho a objetar la prueba por el fundamento de que no sostiene ninguna alegación hecha por la parte contraria en su *pleading*. Por ejemplo, en una acción como la que consideramos ahora en que la demanda no alegaba que el fuego se había propagado por ser defectuosa la locomotora, pero que el abogado de la demandada fué a juicio en el caso asumiendo que los defectos en las locomotoras era una cuestión controvertible,—se resolvió que la demandada no podía oponerse a la prueba presentada por el de-

mandante tendente a demostrar que el sombrerete para chispas de la locomotora era defectuoso. En el mismo caso la demanda alegaba que el fuego había sido propagado por el funcionamiento negligente de la locomotora de la demandada, pero no alegaba que la locomotora era defectuosa en cuanto a sus aparatos para impedir la propagación del fuego. Se resolvió, sin embargo, que el demandante podría probar que el fuego se escapó del sombrerete para chispas, aunque tal prueba tendiese a demostrar que dicho aparato era defectuoso.''

Y,—

''En otro caso en que la demanda en una acción contra una compañía de ferrocarriles por daños y perjuicios ocasionados por fuego alegaba que el fuego fué propagado negligentemente de una de las locomotoras de la demandada a la yerba que crecía en la vía, se resolvió que no constituía error permitir una enmienda después de más de siete años de radicada la demanda original, agregando a ésta que la compañía fué negligente en permitir que la vegetación seca se acumulara y quedara en la vía donde empezó el fuego, pues la enmienda no alegaba una causa de acción separada y distinta.'' White, Suplemento a la obra arriba citada, p. 431, Sec. 2365.

El sumario del caso *Texas & Pacific Railway Company* v. *Gains,* 26 S. W. 873, es en parte como sigue:

''La demanda alegaba que el fuego salió de la locomotora de la demandada debido a la total negligencia del empleado de la demandada que la manejaba, y que descuidada y negligentemente encendió la yerba de la finca del demandante, y que el fuego se debió a la negligencia y descuido del empleado de la demandada al manejar lo locomotora. Se resolvió, que la demanda no circunscribía la prueba al mero manejo de la locomotora por el maquinista, sin tenerse en cuenta la naturaleza defectuosa de la máquina para impedir el escape de fuego.''

Se cita este caso como autoridad en el párrafo inicial de la opinión en el de *San Antonio & A. P. Ry. Co.* v. *Home Ins. Co. of New York,* 70 S. W. 999, el cual es así:

''La demanda alegaba negligencia de la compañía de ferrocarril en funcionar negligentemente su locomotora permitiendo el escape de chispas de la misma que incendiaron cierta materia de cedro que estaba en su vía. Esta fué una alegación suficiente de negligencia,

admitida como prueba no solamente del manejo descuidado de la locomotora, sino también de la construcción insuficiente y equipo de dicha locomotora.''

Y de las notas que encabezan el caso de *Brush* v. *The Long Island Railroad Company,* 10 Appellate Division, 535, confirmado sin opinión en la Corte de Apelaciones, 53 N. E. 1123, citamos lo siguiente:

''Cuando la demanda, en una acción fundada en la negligencia de la demandada, alega que la demandada, una compañía de ferrocarriles, 'atendió tan negligente y descuidamente al fuego que voluntariamente había encendido y tenía en cierta locomotora, que el mismo pasó a la propiedad del demandante,' puede exigirse una responsabilidad a la demandada probando haber usado un sombrerete para chispas defectuoso en su locomotora.

''Cuando hay prueba de que el fuego en cuestión empezó en las zarzas, yerba y hojas secas que estaban cerca de la vía, la corte puede propiamente instruir al jurado que la corporación es responsable si permitió que el fuego, que salió de la locomotora, se comunicara al material que se había permitido aglomerar tan cerca de la vía que constituía fuente de peligro.

''En tal caso, la prueba del comienzo del fuego en las hojas aglomeradas y yerba cortada en el terreno de la demandada es pertinente, aunque no haya referencia específica en la demanda en cuanto a la existencia de este elemento preciso en la propagación del fuego.''

Estos no son sino ejemplos que indican que los casos como éste no constituyen excepción a la más amplia proposición enunciada en la siguiente cita:

''Es una regla general que para que sea fatal una incongruencia entre las alegaciones y la prueba, debe ser tal que induzca a error a la parte contraria en su perjuicio al sostener su acción o defensa sobre sus méritos. Las cortes han sido muy liberales en dar efecto a las leyes que permiten que no se consideren las incongruencias, y enmiendas que han de hacerse para ajustar las alegaciones a la prueba. De conformidad con esto, ellas generalmente consideran las incongruencias técnicas como subsanadas por dichas enmiendas, o renunciadas al procederse al juicio o hacerse referencia a ella sin levantar la objeción.''    21 R. C. L. 611, Sec. 153.

Los artículos 136, 137 y 142 de nuestro Código de Enjuiciamiento Civil se citan íntegramente en el caso de *El Pueblo* v. *Zamorano,* 28 D. P. R. 722, y no es necesario reproducirlos aquí.

El verdadero propósito de estos preceptos es promover la pronta administración de justicia sustancial y, de tener aplicación, conducen principalmente a ese fin.   Teniendo esto presente, las cortes no pueden tener demasiado cuidado en evitar cualquier tentativa en derogar tales disposiciones mediante legislación judicial so pretexto de una interpretación estatutoria.

Con el objeto de indicar la tendencia del moderno criterio en estos particulares, comprendiendo la idea de lo que se exige a un demandado que desea valerse de una incongruencia entre las alegaciones y la prueba, podemos citar los siguientes casos:

> *Standard Oil Co.* v. *Brown,* 218 U. S. 84;
> *Chicago, M. & St. P. Ry. Co.* v. *Voelker,* 129 Fed. Rep. 529;
> *Atlantic & Pacific Railroad* v. *Laird,* 164 U. S. Rep. 393;
> *Hedstrom* v. *Union Trust Co.,* 7 Cal. App. Rep. 278;
> *Pomeroy's Code Remedies,* p. 636;
> *Maienchi* v. *Michelini,* 82 Pac. Rep. 1052;
> *Duke* v. *Huntington,* 130 Cal. 272;
> *Pollitz* v. *Wickersham,* 150 Cal. 238;
> *Abner Doble Co.* v. *Keystone Consolidated Mining Co.,* 145 Cal. 490;
> *Long* v. *Pocahontas Consol. Collieries Co.,* 98 S. E. 289;
> *Thompson on Trials,* Vol. 2, Sec. 2310, p. 1568;
> *Davey* v. *Southern Pacific Co.,* 116 Cal 325;
> *Thompson's Commentaries on the Law of Negligence,* Vol. 6, Sec. 7473, p. 517;
> *Wilcox* v. *Newman,* 190 Pac. 138.

En el presente caso los autos no sólo están completamente desprovistos de objeciones o excepciones, sino que en lo que respecta a la prueba de la existencia de yerba seca en la vía tiende a indicar negligencia en este particular como funda-

mento independiente para recobrar, más bien que al mero hecho de que el fuego fué propagado primero a dicho material combustible extendiéndose de allí a la caña, o al mayor grado de cuidado exigido dentro de las circunstancias en el manejo y funcionamiento de la locomotora de la demandada, aspecto del caso que presentó, y en el cual insistió y argumentó no tanto el demandante en el interrogatorio directo como el abogado de la demandada en las repreguntas.

Manuel Santiago, el primer testigo, declara simplemente que el pasto seco que hay entre la vía y la caña se encendió extendiéndose entonces el fuego a la pieza de caña. Es solamente en el examen de repreguntas y luego a nuevas preguntas de su abogado que entra en detalles respecto a los carbones encendidos, a la obligación de la compañía de mantener limpia la vía y a la negligencia en el cumplimiento de su deber en este particular.

El siguiente testigo, Figueroa, se refiere al hecho escueto de que los carbones encendieron la yerba seca que hay entre la vía del tren y la caña, de donde el fuego, a pesar de los esfuerzos que se hicieron para apagarlo, se propagó a la caña.

Jorge Martínez, en el interrogatorio directo, ni siquiera menciona la yerba seca ni dice terminantemente que el fuego se originó en la vía. Es la demandada la que en el examen de repreguntas revela el dato de que los carbones encendidos que estaban precisamente afuera de la vía encendieron la yerba seca, que el fuego entonces se extendió a la caña y que la compañía está en la obligación de tener talada esa yerba en su vía.

En ninguna parte de las declaraciones, excepto como se ha indicado, existe la más remota indicación de que la demandada esté en la obligación de mantener su vía libre de material combustible o de su omisión en cumplir ese deber. Tampoco revelan los autos en ninguna parte que la cuestión de incongruencia, por no decir de sorpresa o prejuicio para la demandada debido a ella, ni siquiera fué sugerida a la

corte sentenciadora mediante objeción a la prueba, moción de sobreseimiento, argumentación oral al someter el caso o de otro modo, antes de dictarse sentencia.

La prueba no da lugar a ninguna duda razonable en cuanto a la brisa, vientos reinantes, origen del fuego en la vía dentro de algunas pulgadas de los railes y a la rapidez con que empezó la llama y se propagó inmediatamente al pasar el tren.   Parece bastante claro que el juez de distrito no consideró en absoluto, ni fundó su sentencia en grado alguno, en las declaraciones de los testigos de la defensa.   A menos que tengamos que dar por sentado que la anterior declaración no contiene las verdaderas razones que sirven de fundamento a la sentencia apelada, esa cuestión nunca fué considerada.   Por esta razón, y en vista de la forma en que ha de resolverse el caso, no emitimos opinión alguna en cuanto al peso de la prueba de la defensa en tanto pueda considerarse como tendente a refutar el caso *prima facie* como ha sido presentado por el demandante al alegar que el fuego se originó por las chispas o carbones encendidos de una locomotora que pasaba dentro de las circunstancias referidas para indicar el grado de cuidado que debió haberse ejercitado por la demandada.

Considerando, por tanto, el caso desde este punto de vista, no hubo falta de prueba respecto a la negligencia y que la corte inferior sostuvo este criterio en el asunto parece razonablemente claro.   El juez sentenciador no sugiere que haya ningún conflicto en la prueba en cuanto al origen del fuego ni tampoco pone en duda la veracidad de los testigos del demandante.   Sus declaraciones prácticamente no han sido contradichas.   Si dicen la verdad, el origen del fuego ha quedado demostrado fuera de toda duda y esto, como hemos dicho, es bastante para constituir un caso *prima facie*.   Si la corte inferior sin impugnar esta prueba quiso resolver otra cosa, entonces cometió error.

Pero creemos que la declaración hecha por el juez sen-

tenciador sólo quiere decir que en tanto la prueba tendía a demostrar que el fuego comenzó en la yerba seca que había en la vía de la demandada una nueva causa de acción que no ha sido alegada en la demanda quedó establecida y que ésto era una incongruencia fatal.

En uno u otro caso, es claro que la sentencia no debió prevalecer. Y en vista de la conclusión a que hemos llegado respecto a este aspecto del caso no es necesario que consideremos las cuestiones envueltas en la apelación contra la orden desestimando la moción de nuevo juicio.

La sentencia apelada debe ser revocada, devolviéndose el caso para ulteriores procedimientos que no sean incompatibles con esta opinión.

*Revocada la sentencia apelada y devuelto el caso para ulteriores procedimientos.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.