LEOPOLDO SANTIAGO CARMONA, demandante y apelante *v.* EUGENIO MÉNDEZ, BARTOLO PERAZA y ALBERTO NADAL, demandados y apelados.

Núm. 7502.—*Sometido:* Junio 24, 1937. *Resuelto:* Noviembre 12, 1937.

L. *Santiago Carmona,* por su propio derecho; *Miguel Guerra Mon-dragón, R. Rivera Zayas, Rafael Baragaño, Luis Venegas Cortés* y *Rogelio Fernández Garzot,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se trata de un *injunction* posesorio fallado en contra del demandante.

La demanda se radicó en noviembre 13, 1935, y en ella se alegó en resumen que el demandante es dueño y estaba en posesión desde 1927 de tres fincas rústicas, una de cien cuerdas, otra de ciento cincuenta y ocho y otra de ochenta y ocho que se designan con las letras (A), (B) y (C), y que están situadas las dos primeras en los barrios de Cubuy y Hato Puerco de Loíza y la última en el de Guzmán Arriba de Río Grande; que el día antes, o sea el doce de noviembre de 1935, los demandados Eugenio Méndez, Bartolo Peraza y Alberto Nadal personalmente y por medio de una brigada de peones y capataces penetraron violentamente en dichas fincas, en contra de la voluntad de su dueño y poseedor, y se apoderaron de una parcela de una cuerda de la finca (A), de otra parcela de veinte y cinco cuerdas de la finca (B) y de la totalidad de la finca (C), y que no obstante sus reiteradas gestiones para que desocuparan el terreno invadido, se negaban a ello.

El 22 del propio mes de noviembre de 1935 archivaron los demandados su contestación. En resumen niegan que hayan realizado los actos violentos que les atribuye el demandante y que estén en posesión de parte alguna de las fincas (A) y (B), negando que el demandante sea dueño o esté en posesión de la finca (C) y admitiendo que ellos están en posesión de dicha finca en la siguiente forma:

"Los demandados admiten que están en posesión de la denominada finca (C) ahora y desde el 1918, cuando uno de los aquí demandados, Bartolo Peraza, como guardabosque en la floresta federal de Luquillo y en representación de Estados Unidos de América, entró en posesión de dichos terrenos que habían sido deslindados desde el 1912 al 1914 por el ingeniero Sr. Nin, quien colocó pilotes de cemento en la guardarraya. Los demandados alegan que la posesión de dicha parcela se ejerce en representación de Estados Unidos de América y no en su carácter personal, siendo dichos demandados empleados de Estados Unidos de América. Los demandados admiten que han ejercitado y ejercen actos de dominio en la denominada finca (C) pero reiteran que dichos actos han sido en representación y a instancia del gobierno soberano de Estados Unidos de América, que posee esta finca por su propio derecho y por el de su antecesor, el Gobierno de España desde tiempo inmemorial y especialmente durante el último año a la radicación de esta demanda.

"Los demandados alegan en contestación a las alegaciones de la demanda que la posesión de la denominada parcela (C) es ahora y siempre ha sido abierta, pacífica, y sin interrupción desde tiempo inmemorial en representación de Estados Unidos de América y como parte de la posesión y disfrute de la floresta federal de Luquillo, y especialmente una parcela de 305.45 cuerdas denominada como 16-L en el mapa oficial de Luquillo planteado allá por el año 1914."

Como defensas especiales adujeron la falta de jurisdicción de la corte de distrito por tratarse de la posesión de un terreno perteneciente a los Estados Unidos de América y el impedimento del demandante para ejercitar la acción por haber reconocido que la finca (C) es propiedad federal.

Fué el pleito a juicio y la corte lo falló en el sentido que dejamos indicado. De la relación del caso y opinión que sirvió de base a su sentencia transcribimos lo que sigue:

"De la evidencia aparece que los demandados . . . han realizado trabajos en dicha parcela (C) que colinda con una finca del demandante, hallándose entre el lindero de dicha parcela y el de dicha finca del demandante, ciertos postes de hormigón en los cuales se han fijado rótulos que indican que el terreno en cuestión, o sea la parcela (C) es parte de la Floresta Nacional de Luquillo. . . .

"En cuanto a las parcelas descritas bajo las letras (A) y (B), no se ofreció evidencia alguna por la parte demandante, quedando

por consiguiente sin probar las alegaciones de la demanda en lo que respecta a dichas parcelas.''

Por la sentencia se declaró ''sin lugar la demanda, sin especial condenación de costas por haber renunciado a ellas los demandados.''

No conforme el demandante, apeló para ante este tribunal. Señala en su alegato cuatro errores.

■ Por el primero sostiene que las negativas de la contestación constituyen verdaderas admisiones. Cita los casos de *Marrero* v. *Mas,* 48 D.P.R. 527; *Somonte* v. *Mimoso,* 27 D.P.R. 398; *Mazarredo* v. *Echevarría et al.,* 32 D.P.R. 502 y *Guzmán* v. *American Railroad Co.,* 29 D.P.R. 402, pero no argumenta su contención.

Bastará decir que no estamos conformes. La contestación es a nuestro juicio suficiente, como surge del resumen de la misma que dejamos hecho.

Por el segundo error sostiene que la corte actuó en contra de la ley y la jurisprudencia al decidir en un caso de la naturaleza del presente una cuestión de título.

Convenimos en que sólo cabe en un caso como éste resolver la cuestión de posesión, pero no creemos que la corte traspasara los límites del procedimiento. Están tan estrechamente unidos los conceptos de dueño y poseedor que cualquier expresión aislada que pueda encontrarse en la opinión de la corte, no basta para imputarle error. El propio apelante en su demanda comienza diciendo que es ''dueño'' y agrega ''y poseedor'' de las fincas de que se trata. Y es que la realidad se impone. Y aquí la realidad es que el demandante alega que estaba en posesión en concepto de dueño y que los demandados a su vez contraalegan que poseen en representación del dueño legítimo de la propiedad, El Pueblo de los Estados Unidos de América. Pero ello no quiere decir que el hecho de la posesión deba resolverse—ni hay motivo en los autos para concluir que se resolviera en este caso concreto—por el mejor derecho de una u otra parte a la posesión. Es el hecho material de la posesión por el año anterior

a la presentación de la demanda el que hay que fijar y el que una vez fijado debe amparar la sentencia. Y ésa fué la pauta seguida por la corte de distrito. No se ha demostrado la existencia del error que se imputa.

El tercer error se formula así:

"Lo cometió el tribunal *a quo* al resolver que siendo funcionarios del Gobierno Federal los que cometieron el acto torticero, no era la Corte de Distrito de San Juan la que tenía que intervenir."

La Corte de Distrito no resolvió que se cometiera acto torticero alguno por parte de los demandados, y aún cuando en su opinión hizo referencia al concepto en que los demandados se encontraban en posesión de la parcela (C) y trató la cuestión de jurisdicción levantada, su sentencia declaró la demanda sin lugar, esto es, falló en definitiva el pleito y su fallo se sostiene, como veremos en seguida, al estudiar y resolver el cuarto y último señalamiento de error:

■■ Alega en él el apelante que la corte no pesó debidamente la prueba. Llamado el caso para la vista declararon varios testigos por el demandante y varios por los demandados. Luego se solicitó una inspección ocular que fué acordada. Se desistió de ella "a causa de la imposibilidad de llevar al Sr. Juez . . . por . . . las lluvias y los malos caminos" y se acordó en su lugar "que se aportaría prueba adicional de posesión," y así se hizo el día 6 de diciembre de 1936.

Confusos son la mayor parte de los testimonios y contradictorios entre sí los aportados por una y otra parte. Aunque se advierten algunas referencias a las parcelas (A) y (B), en la evidencia del demandante, son tan vagas que bien puede concluirse como concluyó la corte sentenciadora que el demandante no probó lo alegado en cuanto a ellas. La demanda fué redactada precipitadamente. basándose el demandante seguramente en los informes que le suministraron sus empleados, pues de su propia declaración en el juicio se desprende que no fué a sus fincas hasta uno o dos días después. El debate queda circunscrito a la finca (C); y a los

efectos de fijar el alcance de la evidencia aportada en cuanto a la misma nos referimos. a dos testimonios opuestos.

El testigo del demandante, Flor Pereira, declaró:

"Que su nombre es Flor Pereira y que reside en Canóvanas; que conoce a don Leopoldo Santiago Carmona, puesto que fué mayordomo suyo en la finca de Cubuy; se refiere a toda la propiedad que tiene allí, hasta Hato Puerco arriba; que estaba encargado allí de todas las propiedades; que hay una en Río Grande, sabe que una vez denunció a gentes por estar robando madera, o haciendo algo ilegal dentro de la finca de Río Grande; . . . que la corte municipal fué a ver la finca para hacer una inspección ocular; que él estuvo en la finca y puede señalar el sitio donde se hizo la inspección ocular; que es en la finca de Río Grande en el Barrio Palmera, también conocido por barrio de Guzmán Arriba; sabe dónde los peones de los Bosques del Gobierno están talando y que la finca que están talando es de Leopoldo Santiago Carmona; que la posesión de esa finca la tiene don Leopoldo Santiago Carmona; que el sitio donde se hizo la inspección ocular queda dentro de esa finca, es decir, de la finca donde están talando; . . . que sabe que por el norte colinda con Antonio Betancourt, por el sur con Rexach y que por donde sale el sol colinda con Leopoldo Santiago Carmona; . . . que allí hay café, guineos, malangas, majaguas y que el café es poblado habiendo cafetales; que hay los siguientes cafetales: las Guabas, Las Abejas, el Bartolo, el Corcho; que el demandante don Leopoldo Santiago Carmona tiene la posesión de esa finca; que desde el año 1932 estuvo empleado con el demandante de entregado de la finca, pasada la tormenta de San Ciprián; que durante esos años cogió las cosechas de esa finca; que la cosecha del año pasado la cogió el señor Santiago Carmona; que le vendió el café a Nicasio Betancourt; que don Bartolo Peraza, durante el año, no ha estado allí dentro de la finca; que ese café lo cogió públicamente; . . . . que va a hacer cinco meses que salió de mayordomo; que durante todo el tiempo que estuvo allí estuvo disfrutando de la finca; que no le pidió permiso a ninguna persona para recolectar o hacer suyo lo que había en esa finca; . . ."

Y el testigo de los demandados, George Gerhart, depuso:

"Es graduado de un Colegio de Bosques del Estado de Pennsylvania; . . . que en la actualidad ostenta el título de Assistant-Supervisor de la Foresta Nacional de Puerto Rico; que hace más de siete años que está en Puerto Rico; . . . conoce los terrenos que el

demandante describe en la demanda; que las colindancias son por el Norte; . . . con Betancourt; por el Este, con el Gobierno Federal, y por el Sur, con Francisco Rivera, según el plano, y ahora con Rexach Hermanos, y por el Oeste, Santiago Carmona. (Mientras explica las colindancias mira el plano que tiene en sus manos.) Dice que esa finca tiene 88 cuerdas y que conoce la parcela 16-L, a la cual se han referido varios testigos del demandante; que en la 16-L del Gobierno Federal está incluída la finca de 88 cuerdas; que el Gobierno Federal ha estado poseyendo esa parcela 16-L durante estos últimos años, la cual incluye la parcela de 88 cuerdas, parcela (C), descrita en la demanda; que sabe con mucha seguridad que el Gobierno Federal ha estado poseyendo esa parcela porque ha estado allí muchísimas veces en los últimos años, muchas veces durante el último año, y que allí se ve la colindancia, una brecha bien clara de cinco metros, limpia, y además, cuando el camino real o del municipio, entran a esa finca, allí hay placas puestas en los árboles y esas placas las tiene aquí; que la última vez que estuvo allí fué el sábado; que allí estuvieron el guardabosque Bartolo y el Fiscal de la Corte Federal Ortiz Toro; que en la finca de 88 cuerdas hay muchas placas; que él arrancó ésa (señalando) de un árbol el sábado en presencia de Ortiz Toro; que ésa está en la co- lindancia de la parcela 16-L, que colinda por el Norte con Pedro Betancourt; . . . que en la colidancia de la parcela de 88 cuerdas cogió las placas; que los ingenieros abrieron una brecha de cinco metros entre la parcela de 88 cuerdas y el demandante; que esa brecha es bien clara, y que también él sacó allí algunos tocones que fueron cortados mucho antes allí; . . .

"... que la condición del terreno de 88 cuerdas ... todo es monte y maleza, todo perdido, no diría que es un cafetal; . . . que allí no se ha sembrado ningún palo de café, está seguro de eso; que el café que hay allí es silvestre. . . .

"... que no hay ninguna clase de siembras en ese terreno, que no hay malangas ni yautías; que durante los últimos años no le han permitido a nadie entrar en esa finca, que el Gobierno Federal ha estado poseyendo la finca durante el último año;

"... Las fincas (A) y (B) no las posee el Gobierno Federal, nunca las ha poseído; que entre las fincas que admite son de San- tiago Carmona, y las 88 cuerdas hay una diferencia muy grande, porque éstas están cultivadas y son fincas que tienen cultivo de yautías, malangas y pedazos de café y guineos, y esta otra es de maleza; . . ."

La evidencia fué, pues, contradictoria. El demandante y sus testigos bajo juramento declararon que estaban en posesión de una determinada finca y que esa posesión le había sido arrebatada violentamente por los demandados. Estos y sus testigos bajo juramento declararon que no arrebataron la posesión de finca alguna al demandante y que la posesión material en disputa la tenía desde hace años y la tiene El Pueblo de los Estados Unidos de América. La corte dió crédito a la evidencia de los demandados y como no se ha demostrado que actuara movida por pasión, prejuicio o parcialidad, ni que cometiera error manifiesto, y dicha evidencia es suficiente, no hay motivo para revocar su actuación, sin que exista necesidad de considerar y resolver si los demandados actuaron o no como empleados de los Estados Unidos, bastando fundar la desestimación de la demanda en que el demandante dejó de probar satisfactoriamente que estuviera en posesión de las parcelas que describe en ella con un año de anterioridad a la interposición de la misma.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.